**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Raul VALDEZ, Defendant–Appellant.**

**No. 87–5485.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 21, 1989.

Fernando E. Heria, Hialeah, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., William I. Shockley, Linda Collins Hertz, Andrea M. Simonton, Sonia Escobio O'Donnell, Linda Collins Hertz, Asst. U.S. Attys., for plaintiff-appellee.

Before HATCHETT and CLARK, Circuit Judges, and FITZPATRICK *, District Judge.

FITZPATRICK, District Judge:

Appellant Valdez was convicted on one count of possession with intent to distribute more than 1000 kilograms of marijuana and one count of conspiracy to possess more than 1000 kilograms of marijuana with intent to distribute. The issues on appeal are: (1) whether the trial court erred in admitting two statements made by appellant without requiring additional corroborating evidence; (2) whether the trial court erred in not giving a cautionary instruction about the reliability of confessions immediately upon objection; (3) whether the admission of appellant's second inculpatory statement violated *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); (4) whether the trial court erred by admitting the opinion testimony of Customs Investigator Kevin Kozak; (5) whether the trial court erred by instructing the jury on the law of flight; and, (6) whether 18 U.S.C. § 3553(e), which authorizes a trial court to sentence defendants to a term less than the statutory minimum upon motion of the government if the defendant has afforded "substantial assistance" in the prosecution of another person, violated the separation of powers doctrine by granting executive branch officials the authority to perform a judicial act. None of these enumerations of error require a reversal of appellant's conviction.

* Honorable Duross Fitzpatrick, U.S. District Judge for the Middle District of Georgia, sitting by designation.

## FACTS

United States Custom Inspectors at the Charleston, South Carolina port discovered a false wall in a shipping trailer en route to Miami, Florida. Behind the false wall, Customs found numerous bales of marijuana. Special Agents of Customs and the Drug Enforcement Administration (DEA) decided to attempt a controlled delivery of the trailer to Miami in hopes of identifying the persons connected with the load of marijuana. To facilitate monitoring the marijuana and its movement, Customs attached to one of the marijuana bales a beeper which signaled once every fourteen minutes while immobile but once every four seconds upon motion.

When the trailer arrived in Miami, the legitimate cargo was unloaded under the supervision of federal agents. On January 29, 1987, three men visited the customs broker and requested the documents necessary for the release of the trailer. Approximately 45 minutes later, Jose Santos presented the necessary documentation at the railyard where the trailer was located. Santos then hooked the trailer to the truck he was driving and left the railyard, followed by two men in a red Toyota.

After following a circuitous route, Santos took the trailer to a truckyard on Northwest 8th Street in Miami which was owned in part by appellant. The two gentlemen in the red Toyota followed Santos to the truckyard. Federal agents had Santos under surveillance throughout this time period, and after he finally pulled into the truckyard, they positioned themselves around its perimeter. Later that afternoon the trailer was strategically moved to a spot in the yard so that no one could see inside when its doors were opened. Approximately ten minutes later, Customs Investigator Kevin Kozak observed appellant and Santos approach the rear of the trailer. From his surveillance position, Kozak was able to observe the legs and feet of appellant and Santos through the underside of the trailer. The legs and feet then disappeared and Kozak concluded that the two men had entered the trailer as they did not subsequently appear around either side of the trailer.

After approximately twenty minutes, the beeper, being monitored by Special Agent Gene Johnson, began emitting signals indicating that the marijuana bales were being moved. Shortly thereafter, Kozak observed appellant and Santos "rather quickly" exit the trailer, get into an Oldsmobile, and drive toward the front gate of the truckyard. When the Oldsmobile reached the front gate, appellant got out of the car to open the gate. At this point, federal agents, who had blocked the front gate entrance, arrested appellant and Santos and advised them of their constitutional rights. Investigator Kozak observed the beeper in plain view on the front seat of the car. Initially, appellant cooperated and told Investigator Domingo Gonzalez that he had received a telephone call that morning telling him to go to the truckyard and unload the trailer. Appellant expected to be paid $3,500 for the job. Someone else was to pick up the marijuana. Further questioning of Valdez, however, elicited the statement that, "I prefer to keep quiet and then I will talk to my lawyer."

Special Agents Howard Brady and Tamara Connelly transported Valdez to DEA Headquarters for processing and then to the Metropolitan Correctional Center (MCC). En route to the MCC that evening, Appellant Valdez asked, "Where are we going?" Brady told Valdez that they were going to the MCC; Valdez was relieved not to be going to the Dade County Jail. Agent Brady then proceeded to explain the procedures for initial appearance, the bond hearing, and appointment of counsel. Brady stated, "Hey, look, I understand the situation you are in. We are not really all that concerned about your involvement. You are just trying to make a couple of bucks to get through the week. I understand that. We are looking for people that are higher than you." Brady also said, "Look, when you get your attorney, if you feel that you should cooperate, you have to have an attorney with you when you cooperate so that it flows a little smoother." Valdez replied, "The only reason why I had to do this was because I have a wife and a

child, I have a mortgage payment to make, I didn't have any money. I am not a bad person, I just had to do it for the money."

A grand jury indicted appellant on February 17, 1987, charging him on the two above-stated counts. Motions to Suppress were heard by the trial court and granted in part and denied in part. The above-referenced statements made by Valdez were ruled admissible. Valdez was subsequently convicted on both counts by a jury of his peers and was sentenced to two ten-year terms running concurrently, to be followed by five years of supervised release and an assessment of $100.00.

## I. Corroborative Evidence

██ The first issue on appeal is whether or not the trial court erred by admitting the two custodial inculpatory statements into evidence at trial. The basis for appellant's argument is that the statements were not supported by sufficient corroborative evidence. No objection was raised at trial on this basis. The standard of review on appeal of the trial court's denial of a motion to suppress where no objection was made is: viewing the evidence in a light most favorable to the government, were the district court's factual determinations clearly erroneous. *United States v. Beck*, 729 F.2d 1329, 1333 (11th Cir.1984), *cert. denied*, 469 U.S. 981, 105 S.Ct. 383, 83 L.Ed.2d 318 (1984).

██ Appellant asserts that certain evidence rendered the corroborative evidence so weak as to be insufficient. Appellant points to minor inconsistencies between the investigative officers regarding the seating arrangement in the car at the time of the first confession, the investigative officers' failure to take notes or record the first confession, Investigator Gonzalez' failure to prepare a report until four days later, Investigator Olive's complete failure to prepare a report, and alleged inconsistencies between the testimony of Special Agents Johnson and Kozak as to what Kozak could see from his surveillance point. None of these points defeat the admissibility of appellant's confession.

[T]he corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delecti.* It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement.... It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt. *Opper v. United States*, 348 U.S. 84, 93, 75 S.Ct. 158, 164–65, 99 L.Ed. 101 (1954). The record does not show that the trial court committed plain error.

██ Appellant also raises for the first time on appeal the issue of whether the trial court erred in not granting a mistrial after discovering that the confessions were not supported by sufficient corroborative evidence. No motions for mistrial were made by appellant at trial. Absent a motion, the trial court should not declare a mistrial absent manifest necessity. *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). The record does not reflect any manifest necessity in this case.

## II. Cautionary Instruction

██ Appellant apparently argues next that a cautionary instruction on trustworthiness should have been given contemporaneous with the introduction of the confessions. The court, however, did instruct the jury on this point in its closing charge. This decision lies within the sound discretion of the district court judge, which will not be overturned absent an abuse of such discretion which cannot be found in the case at bar.

## III. The *Edwards* Rule

██ Regarding his second confession made in the presence of Special Agents Brady and Connelly, appellant argues that its admission violated the Supreme Court's holding in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *Edwards* established the rule that custodial

interrogation of a suspect by police must stop when the suspect expresses a desire to have counsel. Statements made after a suspect expresses a desire to have counsel present are admissible only where a valid waiver of the suspect's Fifth Amendment rights to silence and counsel can be found. *Id.* at 486, fn. 9, 101 S.Ct. at 1885–86, fn. 9. "*Edwards*·[also] established a new test for when that waiver would be acceptable once the suspect had invoked his right to counsel: the suspect had to initiate subsequent communication." *Solem v. Stumes*, 465 U.S. 638, 646, 104 S.Ct. 1338, 1343, 79 L.Ed.2d 579 (1984).

At oral argument in this case on August 30, 1988, this court invited counsel for both parties to submit supplemental briefs on the applicability to the present appeal of *United States v. Johnson*, 812 F.2d 1329 (11th Cir.1986), authored by Judge Hatchett of this panel. In *Johnson*, after reading defendant his *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a Federal Bureau of Investigation (FBI) agent raised the subject of the robbery in question. Defendant Johnson requested the presence of a lawyer during questioning. After this request, the FBI agent asked Johnson if he wanted the federal criminal process explained. When Johnson responded affirmatively, the agent proceeded to describe the process. After the agent's description, Johnson stated, "All this trouble, all for trying to get some money." Thereafter the agent terminated the conversation. The introduction of Johnson's above-quoted confession in evidence was reversed by this court because its procurement violated Johnson's *Miranda* rights and its introduction was not harmless beyond a reasonable doubt. *Johnson*, 812 F.2d at 1331.

In cases where defendant's statements are taken after a request for the presence of an attorney, we must "begin our review with suspicion, mindful of the fact that the inculpatory statement may have resulted from what has become known as the 'good guy routine.'" *Id.* In the present action, unlike the *Johnson* scenario, the interrogation ceased upon Valdez's request for the presence of a lawyer. When the subject conversation with Agents Brady and Connelly subsequently took place, en route to MCC, Valdez initiated the colloquy with a question. Agent Brady's statements were in response to Valdez' question regarding his destination, they were not in the form of interrogatories. Brady knew that Valdez had been apprised of his rights, but was not aware of Valdez' request for counsel. However, Agent Brady himself reminded Valdez that he had a right to the counsel of an attorney. These distinctions between *Johnson* and the present appeal are significant and bring appellant Valdez' second inculpatory statement within the *Edwards* waiver rule. The second confession was properly admitted by the trial court, because the facts "evince a willingness and a desire for a generalized discussion about the investigation...." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–46, 103 S.Ct. 2830, 2835, 77 L.Ed.2d 405 (1983).

■ Admittedly, the question of whether the admission of the second confession violated the *Edwards* Rule is a close one. Special Agent Brady admitted at the suppression hearing that his statements could possibly have been interpreted as questioning and that he did discuss the possibility of leniency with appellant in exchange for his cooperation. However, assuming *arguendo* that the confession did violate the *Edwards* Rule, its admission would appear to have been harmless error beyond a reasonable doubt. "[A] harmless error analysis may 'save the day' in some cases where law enforcement officers are 'merely being helpful'...." *Johnson*, 812 F.2d at 1331. Agent Brady was simply answering Valdez' question, attempting to allay his fears. The second statement added nothing more to the first confession than an element of sympathy. In his first confession appellant had admitted that he had agreed to unload the marijuana on property of which he was part owner for a sum of $3,500. The second statement to Brady simply sought to provide an excuse. There is no reversible error here.

## IV. Kozak's Testimony

■ Next, Appellant argues that Agent Kozak should not have been allowed to

testify regarding his opinion that appellant and Santos entered the trailer. Fed.R. Evid. 701 provides:

> *Opinion Testimony by Lay Witnesses* If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Fed.R.Evid. 701. Kozak's testimony clearly fits within the confines of Rule 701 as lay opinion and was properly admitted into evidence by the trial court.

## V. Instruction on Flight

Appellant argues that the trial court had an insufficient factual basis for charging the jury on the issue of flight. The trial court, supported by the record, found that Agent Kozak observed appellant and Santos attempting to quickly leave the truckyard shortly after the motion beeper had indicated the marijuana bales were being moved. In addition, Kozak observed the beeper in the front seat of the Oldsmobile in which appellant and Santos had attempted to leave the truckyard. The flight instruction was more than justified and substantiated by the record.

## VI. The Sentencing Statute

Finally, appellant argues that 18 U.S.C. § 3553(e) violates the separation of powers doctrine by giving the executive branch the power to perform a judicial act. Section 3553(e) authorizes sentences below the statutory minimum, upon motion of the government, where a defendant has afforded "substantial assistance" in the prosecution of another. However, a hurdle which cannot be overcome in this case is that the record and appellant's argument are devoid of *any* evidence that appellant offered the government substantial assistance. Thus, appellant has no standing to challenge the constitutionality of Section 3553(e). *See United States v. Muniz–Zacca*, 854 F.2d 1324 (11th Cir.1988).

## CONCLUSION

Since the above-discussed issues have been decided against him, appellant concedes that he is not entitled to a Rule 29 Judgment on Acquittal. Accordingly, the judgment of the district court is AFFIRMED.