[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————————

No. 04-11783

————————————————————

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 23, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00418-CR-CAP-1-1

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

ANTONIO LEE SMITH,
a.k.a. Antonio Smith,
a.k.a. Jimmy Lee Love,

                                        Defendant-Appellant.

————————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————————

**(June 23, 2005)**

Before BLACK and HULL, Circuit Judges and HODGES[*], District Judge.

PER CURIAM:

_____

[*]Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of
Florida, sitting by designation.

Antonio Lee Smith appeals his conviction and sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). He raises three issues on appeal: (1) the district court erred by not finding that the prosecution improperly shifted the burden of proof to the defense during closing argument; (2) the district court erred in denying Smith's motion to suppress statements he made after he invoked his right to remain silent and right to an attorney; and (3) the district court erred by relying on Smith's past convictions to enhance his base offense level under the sentencing guidelines. After reviewing the record, we conclude Smith's claims are without merit and affirm.

## I. BACKGROUND

On July 3, 2003, four police officers on patrol noticed Smith and another male standing on the sidewalk. As the officers neared Smith, he started to run. Officer Scott Rosenfeld saw Smith reach into his waistband, remove a black handgun, and drop it to the ground. After being arrested, Smith was advised of his *Miranda* rights and invoked his right to remain silent and his right to counsel.

When the Atlanta police discovered Smith had been previously convicted of several felonies, they contacted Special Agent Marcos Bess of the Bureau of Alcohol, Tobacco, and Firearms, who subsequently took custody of Smith and transported him to the High Intensity Drug Trafficking Area ("HIDTA") office for

2

processing on federal charges. Bess testified he was aware Smith had been advised of his *Miranda* rights and had requested an attorney. While at the HIDTA office, Bess testified he asked Smith personal, biographical questions – including questions about his prior convictions, but did not question him about the incident leading to his current arrest.

Bess also asked Smith for the name and number of a contact person and whether Smith would like to talk to said person. Smith said he would. With Bess sitting across from Smith, Smith spoke with Carl Jenkins, and said, "I'm through, the Feds got me with a gun." After the phone conversation ended, Smith said to Bess, "The only reason I had that gun is because me and my girlfriend had gotten into a fight and her brothers had threatened me . . ." At that point Bess stopped Smith, reminded him he had requested an attorney, and told him he could not talk to him about his case until his attorney was present.

Smith moved to suppress the statements he made to Bess. The district court denied the motion, finding the statements that were overheard by and made to Bess were given freely and voluntarily, not pursuant to interrogation.

The case proceeded to trial. During closing argument, Smith's attorney said to the jury:

Ask yourselves why didn't [the government] call the other agent who was there with Officer Bess if [Smith] really made the statement. Ask yourselves why [the government] didn't call the other two officers in the vehicle if it really happened the way they said it happened.

In response, the government stated:

Ladies and gentlemen, we'll just go with the two witnesses from whom you have heard, but [the defense] asked an interesting question, why didn't [the government] bring in the other officers. Well, again, [the defense] presented a case, they put on witnesses, why didn't they call those witnesses? The government already had two witnesses saying that this defendant possessed the gun, that he took it out of his waistband and tossed it down. Why would we need even more witnesses to say the same thing? However, if [the defense] knew that these witnesses would say something, something that would help their client, you better believe that they would subpoena them.

Smith objected to the Government's statement and moved for a mistrial on the grounds that the Government had improperly shifted the burden of proof to the defense. After his motion was overruled, the Government continued:

Ladies and gentlemen, again, we accept the burden, we accept the burden, but the fact that [the defense] made the decision to present a case to you and they decided who to put in that witness stand, keep that in mind.

After closing arguments, the district court instructed the jury, "[t]he government has the burden of proving a defendant guilty beyond a reasonable doubt, and if it

4

fails to do so, then you must find the defendant not guilty." The jury returned a guilty verdict against Smith.

Due to prior state felony convictions for burglary, possession of cocaine with intent to distribute, and robbery, Smith received a criminal history category of V under the sentencing guidelines. Smith's offense level for the instant offense would have been 24, pursuant to U.S.S.G. § 2K2.1(a)(3), but the presentence investigation report determined his offense level should be set at 33, pursuant to U.S.S.G. § 4B1.4, because Smith was an armed career criminal within the meaning of 18 U.S.C. § 924(e). For an offense level of 33 and criminal history category of V, the sentencing guidelines call for a range of 210–262 months' imprisonment.

At sentencing, Smith objected to the use of a burglary of a school as a predicate offense under the armed career criminal enhancement, but did not raise an objection to the enhancement on constitutional grounds. The district court overruled his objection and sentenced him to 210 months' imprisonment and 5 years' supervised release.

## II. DISCUSSION

### A. *Standard of Review*

We review a district court's findings of fact for clear error. *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). We review the court's application of law to facts de novo. *Id.* If we find the district court erred in failing to suppress a defendant's statements, we will reverse unless the error was harmless beyond a reasonable doubt. *United States v. Valdez*, 880 F.2d 1230, 1234 (11th Cir. 1989).

### B. *Improper Burden Shifting*

"Prosecutorial misconduct requires a new trial only if we find the remarks (1) were improper and (2) prejudiced the defendant's substantive rights." *United States v. Hernandez*, 145 F.3d 1433, 1438 (11th Cir. 1998) (quoting *United States v. Delgado*, 56 F.3d 1357, 1368 (11th Cir. 1995)). A prosecutor's comments affect the substantial rights of the defendant when they "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991) (quotations and brackets omitted). "[I]mproper argument rises to the level of a denial of due process when there is a 'reasonable probability' that, but for the prosecutor's offending remarks, the outcome of the . . . [proceeding] would have been different." *Id.* (citations and internal quotations omitted).

"[W]hile a prosecutor may not comment about the absence of witnesses or otherwise attempt to shift the burden of proof, it is not improper for a prosecutor to note that the defendant has the same subpoena powers as the government, particularly when done in response to a defendant's argument about the prosecutor's failure to call a specific witness." *Hernandez*, 145 F.3d at 1439 (quoting *United States v. Blackman*, 66 F.3d 1572, 1578–79 n.7 (11th Cir. 1995)). The potential prejudice due to burden shifting is diminished where the prosecution acknowledges in its closing argument that the burden of proof is its to carry, and the trial court also instructs the jury to the same effect. *Id.*

In this case, the prosecutor's comments were in direct response to the defense's rhetorical question as to why the Government did not call additional witnesses. It was not improper for the Government to inform the jury that the defense had the same capability to call witnesses as it did. Moreover, even if the prosecutor's statements were in error, given the prosecutor's statements after Smith's objection and the court's instruction as to who bore the burden, any error was harmless. *See United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) (finding any error harmless – despite improper statements by the prosecutor throughout the trial – because "the district court instructed the jury three times in its charge that the government had to prove its case beyond a reasonable doubt").

7

C. *Statements to Agent Bess*

"The [F]ifth [A]mendment to the Constitution requires that when a person is advised of rights during custodial interrogation and the person requests a lawyer, all questioning must cease." *United States v. Johnson*, 812 F.2d 1329, 1331 (11th Cir. 1986). "Interrogation . . . means 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *United States v. Gomez*, 927 F.2d 1530, 1538 (11th Cir. 1991) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 309 n.5, 100 S. Ct. 1682, 1694 n.5 (1980)).

Smith argues that the district court erred in denying his motion to suppress statements made to Agent Bess because they were the result of custodial interrogation after he had invoked his *Miranda* rights. Specifically, Smith objects to the court's failure to suppress: (1) statements regarding his prior convictions; (2) statements overheard when talking to Carl Jenkins; and (3) statements after his phone call to Jenkins.

As to Smith's statements to Agent Bess regarding his criminal history, prior to the district court's decision whether to suppress them, the parties agreed to stipulate at trial that Smith was a convicted felon. Therefore, even if the district court erred in not suppressing Smith's statements, the error was harmless.

8

There is no indication that Smith's other statements were the product of police action reasonably likely to elicit an incriminating response. When Agent Bess gave Smith his cell phone to talk to Jenkins, Agent Bess was sitting in close proximity to Smith the entire time. Simply offering Smith the opportunity to make a phone call cannot be considered interrogation. Likewise, there is no evidence that Smith's statements regarding his girlfriend once he got off of the phone were anything but voluntary. In fact, after Smith began talking, Agent Bess urged him to stop making statements until his lawyer was present.

D. *Sentencing Enhancements*

In his initial brief to this Court, Smith argued for the first time that application of the armed career criminal enhancement violated his Sixth Amendment right to a jury trial in light of *Blakely v. Washington*, 542 U.S. __, 124 S. Ct. 2531 (2004). Having not challenged the constitutionality of the enhancement at sentencing, Smith's claim is reviewed for plain error. "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States*

9

*Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) (quotations, citations, and internal marks omitted).

The Supreme Court held in *Booker* "that the Sixth Amendment right to trial by jury is violated where *under a mandatory guidelines system* a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." *Id.* (emphasis in original) (citing *United States v. Booker*, 538 U.S. __, 125 S. Ct. 738, 749–56 (2005)). In doing so, "the Court left undisturbed its holding in *Almendarez-Torres v. United States*, that recidivism is not a separate element of an offense that the government is required to prove beyond a reasonable doubt." *United States v. Orduno-Mireles*, 405 F.3d 960, 962 (11th Cir. 2005)

In this case, Smith's sentence was enhanced based solely on prior convictions; therefore, his Sixth Amendment right to a jury trial was not violated, and the district court did not err. However, the district court did commit statutory *Booker* error by treating the guidelines as mandatory, not advisory. *See United States v. Shelton*, 400 F.3d 1325, 1330–1331 (11th Cir. 2005).

As to the statutory *Booker* error, Smith can satisfy the first two prongs of the plain error analysis: there was error and it was plain. The third prong requires Smith to show there is a "reasonable probability of a different result if the

10

guidelines had been applied in an advisory instead of binding fashion by the sentencing judge in this case." *Rodriguez*, 398 F.3d at 1301. Smith has proffered no evidence meeting this burden. "Where '[w]e just don't know' whether the defendant would have received a lesser sentence if the guidelines had been advisory, the defendant has not met his burden of showing prejudice." *United States v. Fields*, __ F.3d __, 2005 WL 1131778 at *3–4 (11th Cir. 2005) (concluding the district court's sentencing of the defendant at the bottom of the guideline range does not establish, by itself, a reasonable probability of a lesser sentence).

## III. CONCLUSION

Based on the foregoing, we hold the following: the Government in its closing argument did not improperly shift the burden to the defendant; the defendant's statements to Agent Bess were not the product of interrogation and should not have been suppressed; and the district court did not commit plain error when sentencing the defendant.

AFFIRMED.