UNITED STATES of America, Plaintiff-Appellee,

v.

Victor Manuel ZAPATA, Defendant-Appellant.

United States of America, Plaintiff-Appellee,

v.

Juan Tomas Lorenzo, Defendant-Appellant.

Nos. 98-8609, 98-8733.

United States Court of Appeals,

Eleventh Circuit.

July 13, 1999.

Appeals from the United States District Court for the Southern District of Georgia. (Nos. CR497-205, CR 498-33), B. Avant Edenfield, Judge.

Before BARKETT, Circuit Judge, and KRAVITCH and MAGILL[*], Senior Circuit Judges.

MAGILL, Senior Circuit Judge:

Juan Lorenzo and Victor Zapata appeal the district court's order denying their motion to suppress evidence discovered in the course of an automobile search. They argue that they did not voluntarily consent to the search and, in the alternative, that the search exceeded the scope of any consent given. We affirm.

I.

Bryan County Deputy Sheriff Tony Phillips and a fellow officer were driving northbound on Interstate 95 when they observed a minivan drift from the leftmost lane into the center lane. Because the minivan nearly sideswiped another vehicle, Phillips stopped the minivan. Phillips's patrol car was equipped with a video camera that began taping when Phillips pulled over the minivan. Phillips approached the minivan and asked the driver, Victor Zapata, to produce his driver's license and to step to the rear of the minivan. Juan Lorenzo, the sole passenger in the minivan, remained in his seat. Zapata complied immediately with Phillips's request.

---

[*]Honorable Frank J. Magill, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

Phillips asked Zapata a number of questions, including how Zapata was doing, whether Zapata was in the military, and what Zapata's nationality was. Zapata responded to each of Phillips's questions. Phillips then explained to Zapata that he had stopped him for crossing lanes and nearly hitting another vehicle. Phillips asked Zapata another series of questions, to which Zapata responded that he was neither sleepy nor drunk, that he had departed from Miami and was going to Boston to visit his daughter, and that Lorenzo had rented the minivan. Zapata also informed Phillips that he and Lorenzo were brothers-in-law.

Phillips then approached the passenger side of the minivan and spoke with Lorenzo. Lorenzo confirmed that he had rented the minivan and that he and Zapata were traveling from Miami to Boston. Lorenzo gave additional information about the purpose and length of the trip.

Phillips returned Zapata's driver's license, gave Zapata a verbal warning, and advised Zapata to have Lorenzo drive in the event he became tired. After bidding Zapata a good night, Phillips asked Zapata if he could search the minivan.[1] Phillips then approached the passenger side of the minivan and also asked

---

[1]Phillips and Zapata conversed in pertinent part:

Phillips: We have a large problem with people transporting drugs [Zapata nods head], large sums of money [Zapata says "yes"], stolen property [Zapata says "uh-huh"], guns, weapons [Zapata says "yeah"] up and down the interstate. You wouldn't have anything like that in the truck, would you? In the van? [You] don't have any of those items?

Zapata: No-no-no.

Phillips: Would you have any problems with me searching the van and the contents of the van?

Zapata: (nods head)

Phillips: Would you mind if I search it?

Zapata: Yes.

Phillips: It's o.k.?

Zapata: It's o.k. Everything is o.k.

Phillips: You don't—do you mind if I search the van?

Zapata: (no response)

2

Lorenzo if he could search the minivan.[2] After receiving affirmative responses to his request to search the minivan from both Zapata and Lorenzo, Phillips asked Lorenzo to get out of the minivan and obtained permission to frisk him and Zapata.

As Phillips began searching the minivan, he noticed that the plastic trim around the interior door handle of the sliding door was not fitted properly to the handle and that the interior door panel was not fitted properly to the sheet metal portion of the sliding door. Because Phillips knew that the minivan was relatively

Phillips: Is it all right for me to search the van?

Zapata: Yes.

Phillips: Search the van?

Zapata: Yes.

Phillips: It's o.k.?

Zapata: Yes, it's o.k.

Report and Recommendation, at 4-5.

[2]Phillips and Lorenzo conversed in pertinent part:

Phillips: Mr. Lorenzo! I was explaining to Mr. Zapata there, we have a problem on the interstate, on I-95 here, with drugs, guns, weapons, large sums of money being transported up and down the interstate.

Lorenzo: Nothing, nothing ...

Phillips: [There's] nothing like that in the vehicle?

Lorenzo: No.

Phillips: Would you have any problem with me searching the vehicle and the contents? Do you care if I search it?

Lorenzo: No.

Phillips: Is it o.k.?

Lorenzo: Yes.

Report and Recommendation, at 6

new, he found the misfitting parts unusual. Phillips then pried back the interior door panel with his fingers. In the process, two of the plastic snaps that held the interior door panel to the sheet metal portion of the door popped loose. Between the interior door panel and the sheet metal portion of the door, Phillips discovered packages appearing to contain cocaine.

After confirming that the packages contained cocaine, the police arrested Zapata and Lorenzo. The men were charged with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Zapata and Lorenzo moved to exclude the cocaine discovered in the course of Phillips's search of the minivan. The magistrate judge's report and recommendation suggested that the motion be denied. The district court adopted the report and recommendation and denied the motion. Zapata and Lorenzo thereafter entered guilty pleas[3] and reserved the right to challenge the suppression ruling. In this consolidated appeal, Zapata and Lorenzo argue the search was unlawful because (1) neither Zapata nor Lorenzo voluntarily consented to a search of the minivan and (2) assuming there was voluntary consent, the search exceeded the scope of any consent provided.

II.

A district court's ruling on a motion to suppress presents a mixed question of law and fact. *See United States v. Wilson,* 894 F.2d 1245, 1254 (11th Cir.1990). This Court reviews the district court's finding of facts under the clearly erroneous standard. *See United States v. Martinez,* 949 F.2d 1117, 1119 (11th Cir.1992). The district court's application of the law to those facts is subject to de novo review. *See id.* We may disturb the district court's findings as to whether or not consent was voluntarily given only if they are clearly erroneous. *See United States v. Dunkley,* 911 F.2d 522, 525 (11th Cir.1990) (per curiam).

III.

---

[3]Pursuant to their respective plea agreements, Zapata pleaded guilty to possessing with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and Lorenzo pleaded guilty to interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952.

4

Appellants first contend that their consent to search the minivan was not voluntary. We note at the outset that both Lorenzo and Zapata had authority to consent to a search of the minivan. *See id.* at 525-26 (holding that both lessee/passenger and driver have authority to consent to search of automobile). Therefore, Appellants' argument on this point must be rejected if either Lorenzo or Zapata voluntarily consented to the search of the minivan.

Lorenzo consented to the search. On two separate occasions he explicitly and unequivocally gave Phillips permission to search the minivan. To be effective, however, his consent must have been voluntarily given. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In *Schneckloth,* the Supreme Court held that the voluntariness-of-consent analysis is conducted with reference to the totality of the circumstances and set forth a number of factors for a court to consider in conducting its inquiry: the person's youth, his lack of education, evidence of the person's low intelligence, the existence of advice as to the nature of the constitutional right implicated, the length of detention preceding the request to consent, the nature of prior questioning, the environment, and whether any physical punishment was involved. *Id.* at 226. We have said that to be considered voluntary, a consent to search "must be the product of an essentially free and unconstrained choice." *United States v. Garcia,* 890 F.2d 355, 360 (11th Cir.1989).

Appellants do not contend that Lorenzo's age, education, or intelligence mitigated his ability voluntarily to consent to the search. It is undisputed that neither Lorenzo nor Zapata was physically punished in any way. Appellants were detained for a relatively short period of time, and the environment in which consent was given was not oppressive. *See United States v. Espinosa-Orlando,* 704 F.2d 507, 513 (11th Cir.1983) (holding environment not unduly coercive where individual was arrested at gunpoint, was forced to lie on the ground near the roadway, and gave consent while officer still had gun drawn); *see also Berkemer v. McCarty,* 468 U.S. 420, 438-39, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (holding public highway is setting generally less coercive than police station). Rather, Appellants focus on Phillips's failure to advise Lorenzo

of his right to refuse the search and Lorenzo's limited understanding of English as supporting the conclusion that his consent was involuntary.

While the government's burden of proving the voluntariness of consent is not satisfied by "showing a mere submission to a claim of lawful authority," *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the government need not establish Lorenzo's knowledge of the right to refuse consent "as the *sine qua non* of an effective consent." *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (internal quotation marks omitted). Lorenzo's consent was voluntary as long as it was "the product of an essentially free and unconstrained choice." *Garcia,* 890 F.2d at 360. In circumstances much more coercive than those presented here, this Court has held that a defendant's consent was voluntary. *See, e.g., id.* at 361 (holding consent was voluntary despite officers' statements that they would not accept suspect's conditional consent to search and, if he refused to consent to full search, officers would attempt to obtain search warrant); *United States v. Long,* 866 F.2d 402, 404 (11th Cir.1989) (holding consent was voluntary where officers asked suspect to consent to search for evidence in his yard and stated that if he refused they would return and "dig the place up").

In contrast to the situations presented in *Garcia* and *Long,* Phillips never attempted to coax Lorenzo into granting consent to search the minivan by threatening to secure his property or obtain a search warrant. The mere fact that Phillips did not inform Lorenzo of his right to refuse consent, given the lack of any coercive behavior on Phillips's part, is insufficient to render Lorenzo's consent involuntary. *See Robinette,* 519 U.S. at 39-40, 117 S.Ct. 417; *United States v. Jones,* 475 F.2d 723, 730 (5th Cir.1973) ("[T]he absence of intimidation, threats, abuse (physical or psychological), or other coercion is a circumstance weighing in favor of upholding what appears to be a voluntary consent.").

Appellants also argue that Lorenzo's limited comprehension of English prevented him from providing voluntary consent. In determining whether an individual has sufficient comprehension of English to provide voluntary consent, courts examine his ability to interact intelligently with the police. *See United*

6

*States v. Galvan-Muro,* 141 F.3d 904, 907 (8th Cir.1998) (holding that defendant had necessary understanding of English where officer testified that defendant had no trouble understanding officer's questions and defendant answered officer's questions "quickly and with some elaboration"); *United States v. Carrate,* 122 F.3d 666, 670 (8th Cir.1997) (holding that defendant had necessary understanding of English where he gave appropriate responses to officers' questions); *United States v. Perez,* 37 F.3d 510, 515 (9th Cir.1994) (same); *United States v. Sanchez-Valderuten,* 11 F.3d 985, 991 (10th Cir.1993) (holding that defendant had necessary understanding of English where he produced driver's license and registration immediately upon request and appropriately responded to officers' questions regarding his travel plans).

In this case, Lorenzo conversed at length with Phillips in English. Lorenzo told him that he had rented the minivan and that Appellants were traveling from Miami to Boston. Lorenzo told Phillips that Appellants were making the trip because Zapata's mother was having problems. Lorenzo told Phillips that Appellants were staying in Boston for three days and that he had rented the minivan for four days. In response to two questions from Phillips, each differently worded, Lorenzo twice gave his consent to search the minivan. There is no evidence that Lorenzo was confused by, or did not understand, any of Phillips's questions. Rather, Lorenzo's intelligent interaction with Phillips indicates that he was capable of understanding that Phillips was requesting his consent to search. The purported limitations on Lorenzo's understanding of English did not preclude him from making "an essentially free and unconstrained choice" to grant Phillips's request to search the minivan.

The district court, in adopting the magistrate judge's report and recommendation, did not clearly err when it concluded that Lorenzo voluntarily consented to the search of the minivan.

## IV.

In the alternative, Appellants argue that the cocaine obtained from the search of the minivan should be suppressed because the search exceeded the scope of any consent given. We have said that a search is impermissible when an officer does not conform to the limitations imposed by the person giving consent.

7

*See United States v. Strickland,* 902 F.2d 937, 941 (11th Cir.1990); *see also Martinez,* 949 F.2d at 1119 (holding that consensual search is confined to the terms of actual consent given). When an individual provides a general consent to search, without expressly limiting the terms of his consent, the search "is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass." *Strickland,* 902 F.2d at 941; *see also Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) ("The standard for measuring the scope of a suspect's consent ... is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?").

To ascertain what conduct is within the "bounds of reasonableness," we must consider what the parties knew to be the object (or objects) of the search. *See id.* at 251, 111 S.Ct. 1801; *Martinez,* 949 F.2d at 1119. A general consent to search for specific items includes consent to search any compartment or container that might reasonably contain those items. *See id.* at 1120. In this case, Phillips prefaced his request for Lorenzo's consent by explaining to Lorenzo that he was concerned about interstate transportation of "drugs, guns, weapons, [and] large sums of money." Report and Recommendation, at 6. Because both Phillips and Lorenzo knew that the objects of Phillips's search were drugs, guns, other weapons, and money—due to Phillips's concern over transportation of these items—the search was within the scope of Lorenzo's consent as long as the area behind the interior door panel might reasonably have contained drugs, guns, other weapons, or money.

Numerous cases in our sister circuits demonstrate that money and drugs are frequently stored behind interior panels in an automobile. *See, e.g., United States v. Flores,* 63 F.3d 1342, 1361 (5th Cir.1995) (police found large sum of cash behind vents in interior panels of car); *United States v. Pena,* 920 F.2d 1509, 1512 (10th Cir.1990) (police found cocaine in area between interior door panel and exterior door panel); *United States v. Garcia,* 897 F.2d 1413, 1416 (7th Cir.1990) (police found marijuana behind interior door panel); *United States v. Blanco,* 844 F.2d 344, 348 (6th Cir.1988) (police found drugs behind interior door panels).

Because Phillips could reasonably have found at least some of the objects of the search behind the minivan's interior door panels, he did not exceed the scope of Lorenzo's consent when he searched these areas.

Citing *Strickland,* Appellants also argue the search exceeded the scope of any consent given because two plastic clips attaching the interior door panel to the metal door exterior came free in the course of the search. While we have held that a search exceeds the scope of consent when an officer destroys a vehicle, its parts, or its contents, *see Strickland,* 902 F.2d at 941-42, a search does not exceed the scope of consent merely because an officer forces open a secured compartment that reasonably may contain the objects of the search. *See Martinez,* 949 F.2d at 1121. The situation presented here is easily distinguishable from the one presented in *Strickland.* In that case, the officer slashed open the spare tire of the suspect's automobile. *See Strickland,* 902 F.2d at 939. In this case, there is no evidence that Phillips damaged the interior door panel, any other part of the minivan, or its contents. The de minimis effect of the search on the minivan—the dislocation of two plastic clips—is insufficient to render the search outside the scope of Lorenzo's consent. *See Flores,* 63 F.3d at 1362 (holding search did not exceed scope of consent where two screws and two vent covers were removed from interior panels of automobile); *United States v. Santurio,* 29 F.3d 550, 553 (10th Cir.1994) (holding search did not exceed scope of consent where multiple screws were removed from area securing carpet to floor of automobile so officer could access underlying metal compartment); *United States v. Espinosa,* 782 F.2d 888, 892 (10th Cir.1986) (holding search did not exceed scope of consent where back seat was removed from automobile and interior panel of car was pulled back to expose underlying area).

We are convinced that Phillips's search of the minivan was within the scope of Lorenzo's consent.

IV.

Accordingly, we AFFIRM the district court's order denying Appellants' motion to suppress.