[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————————

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**November 18, 2005**
**THOMAS K. KAHN**
**CLERK**

No. 05-12547
Non-Argument Calendar

———————————————————

D. C. Docket No. 04-00251-CR-WTM-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM PHILLIP CAMP, JR.,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Georgia

————————————————

**(November 18, 2005)**

Before BLACK, BARKETT and MARCUS, Circuit Judges.

PER CURIAM:

William Phillip Camp, Jr., appeals his conviction, imposed pursuant to his conditional guilty plea to being a felon in possession of firearms, in violation of 18

U.S.C. §§ 922(g)(1) and 924(e)(1).[1] On appeal, he argues that the district court erred by denying his motion to suppress firearms evidence found during a warrantless search of a storage unit. The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") conducted the search after Camp's girlfriend, Ruth Compton, gave Special Agent Louis J. Valoze verbal consent. Special Agent Valoze seized five firearms (two revolvers, a shotgun, a rifle, and a 9 mm semiautomatic pistol), between ten and twelve high capacity magazines compatible with AK-47-type rifles, and hundreds of rounds of ammunition. On appeal, Camp contends that Compton did not have actual or objectively reasonable apparent authority to grant valid consent to search the storage unit.

After thorough review of the record, as well as careful consideration of the parties' briefs, we affirm.

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999). We accept the district court's factual findings as true unless the findings are shown to be clearly erroneous. Id. All facts are construed in the light most favorable to the prevailing party below. United States v. Bervaldi, 226 F.3d 1256, 1262 (11th

---

[1]In entering his guilty plea, pursuant to Fed. R. Crim. P. 11(a)(2),Compton reserved his right to appeal the denial of his motion to suppress the firearms evidence.

Cir. 2000). The district court's application of the law to the facts is reviewed <u>de novo</u>. <u>Id.</u>

The facts relevant to the suppression issue are undisputed. Camp's probation officer contacted Special Agent Valoze after Compton, Camp's "live-in companion," had reported to the probation officer that Camp improperly was in possession of several firearms. Thereafter, Special Agent Valoze spoke with Compton, who told him: (1) Camp had buried several firearms before he was incarcerated on federal charges and subsequently retrieved them following his release; (2) on or about July 20, 2004, she, Camp, and his son moved the weapons to Abercorn Lock n' Store, a storage facility in Savannah, Georgia; (3) at the storage facility, Camp asked Compton to rent a storage unit in her name for him to store his firearms; (4) Compton entered into a rental agreement to rent a storage unit in her name; (5) Camp then placed the firearms in the unit, which he then locked, giving Compton a key to the unit; and (6) the following day, Camp changed the lock and refused to give Compton a key. During her conversation with Special Agent Valoze, Compton gave verbal consent to search the unit. Based upon Compton's consent, Special Agent Valoze opened the storage unit and found 5 firearms, an ammunition canister containing high-capacity feeding devices, and over 1,000 rounds of ammunition.

In his suppression motion, Camp argued that Compton did not have actual authority to consent to a search of the storage unit because he had sole use and control of the property. He also asserted that because Agent Valoze knew that Compton did not have a key to the unit and had not accessed the unit since the guns were stored there, his reliance on Compton's apparent authority to consent was not objectively reasonable. The government did not dispute the facts as presented by Camp, but added that (1) the landlord had placed a padlock on the unit because the rent was overdue, and (2) Compton also had stored one of her own guns in the unit.

In a Report and Recommendation ("R&R"), the magistrate judge found, inter alia, that Compton had authority to consent to the search, given her lawful right to access the unit under the terms of the lease, and that Camp could not deprive Compton of her right of access simply by changing the lock and refusing to prove a key, citing United States v. Backus, 349 F.3d 1298 (11th Cir. 2003), cert. denied, 541 U.S. 951 (2004). The magistrate judge noted that Compton's right to access the storage unit was unequivocal: "Compton retained at all times the right to enter the storage unit, even if she could do so only by cutting the lock." R&R at 9. The district court rejected Camp's argument that his change of the locks somehow affected Compton's access: "Defendant's suggestion that by locking

4

Compton out of the storage unit somehow deprived her 'mutual use' or 'control' of the property within the meaning of Matlock . . . is a brazen argument unsupported by any legal precedent." Id. at 9-10.

Over Camp's objections, the district court adopted the R & R and denied the motion to suppress. Camp then entered a conditional guilty plea to the charge, reserving his right to appeal the ruling on his motion to suppress. The district court sentenced Camp to a 46-month term of imprisonment. This appeal followed.

It is well-settled that, in the absence of probable cause or reasonable suspicion, law enforcement officers may nonetheless search an individual without a warrant, "so long as they first obtain the voluntary consent of the individual in question." United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989). Third parties may consent to searches when they possess "common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock, 415 U.S. 164, 171, 94 S. Ct. 988, 993, 39 L. Ed. 2d 242 (1974). The Supreme Court has explained that:

> [t]he authority which justifies the third-party consent does not rest upon the law of property. . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

Id. at 172 n.7, 94 S. Ct. at 993 n.7 (internal quotations and citations omitted). Moreover, "even if the consenting party does not, in fact, have the requisite relationship to the premises, there is no Fourth Amendment violation if an officer has an objectively reasonable, though mistaken, good-faith belief that he has obtained valid consent to search the area." United States v. Brazel, 102 F.3d 1120, 1148 (11th Cir. 1997).

Here, there was both mutual use and joint access such that Camp and Compton had common authority over the storage unit in which the firearms were found, within the meaning of Matlock and Compton, accordingly, could consent to a warrantless search of it. Compton and Camp both stored property in the unit (mutual use) and Compton retained joint access to the unit since she was the only name on the unit's lease. The fact that Camp wrongfully locked her out of the unit did not divest her of her actual or apparent authority to consent to a search.[2]

---

[2]In Backus, which was cited in the R&R, we held that an estranged spouse, who jointly owned and occupied a home with the defendant, could provide consent to a search of it. 349 F.3d at 1299-1300. Prior to providing the consent, the estranged spouse had fled from the family home in Miami, where Backus had abused her, to a shelter in Chicago and did not return to the house for at least six months. Id. at 1301. She ultimately told the police about a number of illegal firearms that Backus had in the house and consented to a search of the house. Id. at 1302-03. We held that the estranged spouse could consent to the search of the home, based upon, inter alia, joint ownership of the property. Id. at 1305. In reaching this conclusion, we rejected Backus's argument, similar to Camp's argument in the instant appeal, that changing the locks affected his estranged wife's ability to consent: "if Backus truly did not expect his wife to return, it is hard to understand why he would have felt it necessary to change the deadbolt lock on the door to prevent her key from working in it." Id. at 1304; see also United States v. Bertram, 805 F.2d 1524, 1528 (11th Cir. 1986) (holding that defendant's wife who had joint access to marital home also had actual authority to consent to search of home).

6

Simply put, viewing the evidence in a light most favorable to the government, the district court did not err in determining that Compton had "common authority over or other sufficient relationship to the premises or effects sought to be inspected," within the meaning of Matlock, and denying his motion to suppress. Accordingly, we affirm Camp's conviction.

**AFFIRMED.**