[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 26, 2007
THOMAS K. KAHN
CLERK

No. 06-13797
Non-Argument Calendar

_____

D. C. Docket No. 05-00068-CR-DF-5

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SEAN BRYANT REGAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(February 26, 2007)**

Before ANDERSON, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Sean Bryant Regan, through counsel, appeals the district court's denial of his

motion to suppress, and his conviction for unlawful possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d).  Regan argues that the district court clearly erred by denying his motion to suppress evidence because the vehicle checkpoint violated the Fourth Amendment.  First, Regan argues that the primary purpose of the checkpoint was impermissibly for general crime control rather than traffic safety.  Second, Regan argues that even if the primary purpose of the checkpoint was traffic safety, the checkpoint was unreasonable and violated the Fourth Amendment because  the government's interest in preventing motorists from running the four-way intersection was only slight as compared to the significant intrusion upon the individual motorists.

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999). We review the district court's findings of fact for clear error, and the court's application of the law to those facts de novo.[1] Id.  These factual findings include the district court's credibility determinations, to which we will "accord considerable deference." United States. v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (citation and internal quotation marks omitted).  "[A]ll facts are

[1] The parties agree that the application of the law to the facts should be reviewed de novo, and they do not suggest that, to the extent Regan argues for the first time on appeal that the checkpoint was unreasonable, we should review for plain error.

2

construed in the light most favorable to the prevailing party below." United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). "The individual challenging the search has the burdens of proof and persuasion." United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998).

The Fourth Amendment provides for the right to be free of unreasonable searches and seizures, and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. The Fourth Amendment requires that searches and seizures be reasonable. A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing. Chandler v. Miller, 520 U.S. 305, 308, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997). Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. Brown v. Texas, 443 U.S. 47, 50-51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979) (citations and quotations omitted).

"It is well established that a vehicle stop at a highway checkpoint effectuates a seizure within the meaning of the Fourth Amendment." Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 450, 110 S.Ct. 2481, 2485, 110 L.Ed.2d 412 (1990). The United States Supreme Court, however, has "recognized . . . limited

3

circumstances in which the usual rule [of individualized suspicion] does not apply." City of Indianapolis v. Edmond, 531 U.S. 32, 37, 121 S.Ct. 447, 451 148 L.Ed.2d 333 (2000). For example, the Supreme Court has upheld brief, suspicionless seizures of motorists at a sobriety checkpoint aimed at removing drunk drivers from the road. Sitz, 496 U.S. at 445, 110 S.Ct. at 2488. In addition, in Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979), the Supreme Court suggested that a roadblock to question all oncoming traffic to verifying drivers' licenses and vehicle registrations with the interest of serving highway safety would be permissible under the Fourth Amendment. The Supreme Court, however, has held that a checkpoint program whose primary purpose was to detect evidence of ordinary criminal wrongdoing violates the Fourth Amendment. Edmond, 531 U.S. at 37-38, 121 S.Ct. at 452.

Even if the government has the authority to conduct a checkpoint, the reasonableness inquiry under the Fourth Amendment requires a determination of whether the intrusion on an individual's privacy was warranted in light of the state's interest. Sitz, 496 U.S. at 453-454, 110 S.Ct. at 2487. Still, the district court should not attempt

> to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger. But for purposes of Fourth Amendment analysis, the choice among

4

> such reasonable alternatives remains with the governmental officials who have a unique understanding of, and a responsibility for, limited public resources, including a finite number of police officers.

Id. Thus, we must also consider whether the government's "operation–as planned or in the reality of its performance–violated plaintiff's constitutional rights; that is, whether [the checkpoint was] reasonable in the light of the state's interest in conducting the roadblocks, the effectiveness of the operation in promoting that interest, and the level of intrusion on the individual's privacy caused by the checkpoints." Merrett v. Moore, 58 F.3d 1547, 1551 (11th Cir. 1995).

In this case, testimony at the suppression hearing supports the district court's finding that the checkpoint was implemented primarily to respond to traffic safety concerns. District Court Opinion at 12 ("The Government has shown that the primary purpose of the checkpoint in question was not to engage in general crime control, but instead to police the intersection for drunk driving, to perform routine checks for drivers' licenses and vehicle registration, and to enforce compliance with general traffic laws."). The Monroe County Sheriff's Office policy regarding checkpoints indicated that they were to focus on the problem of road safety. In addition, Officer Duncan and Cpl. Grindstaff reported that the purpose of the checkpoint was to respond to complaints of motorists running the four-way intersection at Teagle and Brownlee Roads, that the intersection was plagued with

5

intoxicated drivers coming from neighboring counties, and that each vehicle was stopped to check the motorists's license and proof of insurance. See Sitz, 496 U.S. at 445, 110 S.Ct. at 2481, Prouse, 440 U.S. at 663, 99 S.Ct. at 1401.

Furthermore, even though Deputy Blanks stated at one point that the purpose of the checkpoint was to respond to a high volume of burglaries and narcotics offenses in the area, that did not invalidate the lawfulness of the checkpoint. As the district court noted, Deputy Blanks was not employed by the sheriff's office in a supervisory capacity; instead, he was in training at the time of the checkpoint. Thus, he did not have a role in approving the checkpoint. In addition, Deputy Blanks's statement was not corroborated by other documentary and testimonial evidence, and, at the suppression hearing, he clarified that the checkpoint had a dual purpose.

With respect to the balancing of competing interests, the district court did not err in finding that the checkpoint advanced an important state interest as compared to the level of intrusion on individual's privacy. First, the district court did consider the competing interests implicated in carrying out the checkpoint, namely, the county's interest in maintaining highway safety, the checkpoint's effectiveness at achieving that goal, and the level of intrusion on an individual's privacy, and concluded that the balance of the interests weighed in favor of finding

6

the checkpoint reasonable under the Fourth Amendment.

Second, the after arrest reports and suppression hearing testimony confirmed that the checkpoint was executed for the important state interest of ensuring compliance with the state's driver licensing and vehicle registration laws, and to check for drunk drivers. See Sitz, 496 U.S. at 445, 110 S.Ct. at 2481, Prouse, 440 U.S. at 657-58, 99 S.Ct. at 1398. The documentary and testimonial evidence also showed that every motorist who drove through the intersection during the checkpoint was stopped. Thus, the officers did not engage in randomized stops; instead, every vehicle was stopped and every motorist was asked for documentation. See Prouse, 440 U.S. at 661, 99 S.Ct. at 1400.

The evidence shows a checkpoint designed to comply with the Constitution. Even though records of the time required to conduct the document inspection were not kept, at the hearing Duncan testified that the checkpoint stop lasted an average of one or two minutes. See Merrett, 58 F.3d at 1551 (upholding a less than one minute checkpoint stop for document inspection and external sniff by a K-9 unit). Evidence presented at the hearing showed that the sheriff's office had received complaints of traffic safety violations at the intersection.

In sum, the government's interest in preventing accidents caused by motorists, some of whom were intoxicated, running the four-way intersection, the

7

effectiveness of the checkpoint in achieving the goal of traffic safety, and the level of intrusion on an individual's privacy caused by the checkpoint, weighs in favor of the checkpoint. Accordingly, we affirm.

**AFFIRMED.**