[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10915
Non-Argument Calendar
_____

D.C. Docket No. 7:13-cr-00202-LSC-HGD-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TEREK ANTONE-HERRON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 10, 2014)

Before WILLIAM PRYOR, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Terek Antone-Herron appeals the district court's denial of his motion to suppress evidence found during a warrantless search of his home in Duncanville, Alabama. The district court denied the motion on the basis that a co-occupant, Lakendrix May, gave officers consent to enter the home. On appeal, Antone-Herron argues that the government did not establish that May voluntarily consented or that officers reasonably believed May had the authority to consent. After careful consideration, we affirm.

## I.

The factual background for this appeal is as follows. In the early morning hours of December 15, 2012, a shooting occurred in the parking lot of a Mapco gas station in Tuscaloosa, Alabama. With the help of witnesses and video surveillance, the Tuscaloosa County Sheriff's Office identified the defendant, Antone-Herron, as a person of interest. Specifically, the Sheriff's Office believed that Antone-Herron had driven a vehicle that was involved in the shooting and had given a gun to one of the shooters.

Later that morning, Sergeant Dale Phillips, Investigator Timothy Elmore, and one other deputy located Antone-Herron in his residence at 7650 Wuthering Heights Lane in Duncanville, Alabama. Parked in front of the home was a car with multiple bullet holes in it, believed to have been involved in the shooting. The car was registered to May. The officers, who did not have a search or arrest warrant,

knocked on the door, and May responded. The officers stated that they were investigating the Mapco shooting and were looking for Antone-Herron, and May allowed the officers to enter the residence. Antone-Herron disputes that May consented to the officers' entry, which we address in more detail below. As the officers entered, they saw Antone-Herron lying on a couch with his hand under him. The officers woke the defendant up and moved him away from the couch, finding a TAC .357 caliber revolver underneath him. Knowing that Antone-Herron was a convicted felon, Phillips arrested him.

In a post-arrest interview with police, Antone-Herron admitted to possessing the TAC revolver, and he also directed officers to the gun used in the Mapco shooting—a Glock .45-caliber pistol—which was hidden underneath a freezer in the home. A federal grand jury later indicted Antone-Herron on two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Antone-Herron filed a motion to suppress the guns and post-arrest statements arguing that the officers were not permitted to enter his residence without a warrant or consent. A suppression hearing was held before a magistrate judge. After the hearing, the magistrate judge issued a report and recommendation determining that the initial entry was lawful because it was based on May's consent. In pertinent part, the magistrate judge made the following findings of fact:

3

[Antone-Herron's] residence was a double-wide trailer. Officers went to the front door of the trailer and knocked. After a short period of time, the door was answered by Lakendrix May. May appeared to the officers to have just awakened. Sergeant Phillips asked May if Anton[e]-Herron was present inside the residence. May advised them that he did not know whether Anton[e]-Herron was there or not because, although he stayed there, he had a separate room in the back. Sergeant Phillips told May that his car had bullet holes in it. May advised that he did not know anything about that because Anton[e]-Herron had used it the previous evening.

Sergeant Phillips then asked if they could come inside to look for Anton[e]-Herron, and May told the officers to "do what you gotta do." He then remained outside the trailer while the officers entered.

Finding the initial entry to be lawful, the magistrate judge recommended denying the motion to suppress the TAC revolver. The magistrate judge recommended suppressing the Glock pistol, however, because the officers' search under the freezer exceeded the scope of May's consent, which was limited to searching the residence for Antone-Herron. Only the denial in part of the suppression motion is at issue in this appeal.

Antone-Herron filed objections to the magistrate judge's report and recommendation. The officers did not obtain voluntary consent to enter the home, he argued, because May, a "co-tenant," merely acquiesced to a "show of official authority." Antone-Herron further asserted that May's statement to the officers— "do what you gotta do"— was insufficient to show that his consent was freely and

4

voluntarily given.    Antone-Herron also challenged various purported inconsistencies in the officers' testimony about the entry to the home.

After the magistrate judge recommended denying in part Antone-Herron's suppression motion, he conditionally pled guilty to possessing a firearm as a convicted felon, reserving his right to bring this appeal.  Then, in a summary order, the district court adopted the magistrate judge's report and recommendation.  In February 2014, Antone-Herron was sentenced to 71 months of imprisonment, to run concurrent with a state-court sentence.  This timely appeal followed.

## II.

"A district court's ruling on a motion to suppress presents a mixed question of law and fact."  *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). We review the factual findings for clear error and the application of the law to those facts *de novo*.  *Id.*  The district court's findings as to whether consent was voluntarily given for a search are reviewed for clear error.  *Id.* at 1240-41.

## III.

Warrantless searches inside a home are presumptively unreasonable, subject to a few established exceptions.  *See Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980); *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989).  One such exception is a search conducted pursuant to voluntary consent. *Garcia*, 890 F.2d at 360.  As relevant here, a warrantless entry and search of a

5

home is lawful "if the officers have obtained the consent of a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 179, 110 S. Ct. 2793, 2796 (1990).

Whether consent is "voluntary" is a factual determination to be made based on the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 93 S. Ct. 2041, 2059 (1973). The government bears the burden of proving that consent was voluntarily and freely given and was not the product of coercion or mere submission to police authority. *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989). But the government does not need to show that the consenter knew he had the right to refuse consent. *See Schneckloth*, 412 U.S. at 247-48, 93 S. Ct. at 2058. Rather, the lack of any effective warnings to a person of his rights is simply a factor to consider in evaluating voluntariness under the totality of the circumstances. *See id.*

## A.

Antone-Herron challenges May's consent on two bases. First, Antone-Herron asserts, the government failed to prove anything more than May's mere acquiescence to a show of official authority. In support of his position, he points to facts indicating that May had just woken up, that the officers had attempted to enter the apartment before gaining consent, that the officers questioned May about a shooting involving the car, that Elmore drew his gun at some point, and that the

6

government did not introduce evidence of May's intelligence and education or evidence showing that the officers informed May of his right to refuse consent.

Here, Antone-Herron fails to establish clear error by the magistrate judge or the district court in finding that May, a co-occupant, voluntarily and freely consented to the home entry. May did not merely "fail[] to object to the entry," *see United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002) (quotation marks omitted) (discussing *United States v. Gonzalez*, 71 F.3d 819, 830 (11th Cir 1996) (stating that "it is inappropriate to sanction entry into the home based upon inferred consent" (brackets and internal quotation marks omitted)); he explicitly told the officers to "do what you gotta do," which, based on the officers' statements to May, included entering the home to search for Antone-Herron. After giving verbal permission, May then allowed the officers to enter without objection. The officers' testimony at the suppression hearing also reflects that May gave permission to enter. In similar circumstances where only a few officers were present without their guns drawn, this Court has found a defendant's "yielding the right-of-way" to the officers, in the absence of any explicit verbal consent, to be sufficient voluntary consent to enter. *See Ramirez-Chilel*, 289 F.3d at 751-52. May's conduct and verbal statements in this case evidenced more voluntary consent than simply yielding the right-of-way, which we found sufficient in *Ramirez-Chilel*.

7

Nor do the circumstances show that May was intimidated or forced into consenting to the search by a "show of authority" by the officers. *See, e.g.*, *United States v. Edmondson*, 791 F.2d 1512, 1514-15 (11th Cir. 1986) (finding a defendant's "consent"—opening the door, stepping back, and placing his hands upon his head—involuntary where it was prompted by a number of Federal Bureau of Investigation agents who had surrounded Edmondson's apartment, drawn their weapons, and knocked on the door yelling, "FBI. Open the door."). Although there is evidence indicating that Elmore and Phillips drew their weapons upon entering the home, there is no evidence that the officers had their guns drawn at the time they were speaking with May outside the home and requesting permission to enter to look for Antone-Herron. And May confirmed in his testimony at the suppression hearing that the officers did not say or do anything threatening or intimidating toward him. The fact that the officers did not advise May of his right to refuse does not, alone, vitiate his consent. *See Schneckloth*, 412 U.S. at 247-48, 93 S. Ct. at 2058. In view of the totality of the circumstances of the officers' interaction with May, we cannot say that the district court erred in finding that May's consent to enter the home was freely and voluntarily given.

We note that this case is well within the bounds of previous cases in which we have found consent to be voluntary. *See Ramirez-Chilel*, 289 F.3d at 751-52. Indeed, in circumstances much more coercive than those presented here, this Court

8

has held that a defendant's consent was voluntarily given. *See e.g.*, *Garcia*, 890 F.2d at 362 (finding voluntariness where fourteen agents surrounded the home, defendant was in handcuffs, and defendant initially consented to a limited search but then was told by officers that unless he gave full consent they would get a warrant and return); *United States v. Long*, 866 F.2d 402, 404-405 (11th Cir. 1989) (finding voluntariness where officers threatened to return with a warrant and "dig the place up" unless defendant consented to a search).

In short, the district court's finding that May's consent was freely and voluntarily given is not clearly erroneous. *Zapata*, 180 F.3d at 1240-41. Consequently, we affirm the district court on this basis.

**B.**

Antone-Herron also contends that the officers could not have reasonably believed that May had authority to consent to a search of the home because the officers failed to inquire further after May stated that he stayed in the home. Antone-Herron did not argue this issue below or object to the magistrate judge's report and recommendation on this ground, so we generally would review the issue, at most, for plain error only.[1] *See, e.g.*, *United States v. Ward*, 486 F.3d

---

[1] Furthermore, in contrast to his appellate arguments, Antone-Herron described May as a "co-tenant" in his objections to the magistrate judge's report, so he arguably invited any error on this issue. *See United States v. Ross*, 131 F.3d 970, 988 (11th Cir. 1997). Regardless, we address the issue and note that there is no error.

1212, 1221 (11th Cir. 2007) (arguments raised for first time on appeal are reviewed for plain error only); *see also* Fed. R. Crim. P. 52(b).

In any case, Antone-Herron has not shown that the district court erred, let alone plainly erred, in implicitly concluding that May had the authority to consent to a search of the home.  Even if May, in actual fact, lacked common authority in the home, the resulting entry based on his consent was valid so long as the officers, at the time of entry, "reasonably believed" that May possessed authority over the premises.  *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008); *see Rodriguez*, 497 U.S. at 188-89, 110 S. Ct. at 2801.

Antone-Herron has not demonstrated that the magistrate judge and district court erred in finding that the officers reasonably believed that May could provide consent for a warrantless entry.  When May answered the door at the residence, he appeared to the officers as if he had just awoken.  His car was located outside, and, in response to the officers' questions, he stated that he stayed at the property.  These facts all indicate that a reasonable officer could believe that May had authority to consent to an entry of the premises.  *See Mercer*, 541 F.3d at 1074.

## IV.

For the reasons explained above, the district court did not err in denying Antone-Herron's suppression motion, and we, therefore, **AFFIRM** his conviction.