[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15719
Non-Argument Calendar

_____

D.C. Docket No. 2:13-cr-00020-JES-DNF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY WARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 29, 2015)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Jerry Ward appeals his conviction for possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and (e)(1). Specifically, he appeals the district court's denial of his motion to suppress,

arguing that: (1) the district court clearly erred in accepting the magistrate judge's determination that the testimony of Lee County Sheriff's Deputy Bryson Clark was more credible than Ward's; (2) the deputy's questioning of Ward was not a consensual encounter; and (3) a search of his pillowcase was involuntary. After careful review, we affirm.

We review a district court's denial of a motion to suppress evidence as a mixed question of law and fact. United States v. Lewis, 674 F.3d 1298, 1302 (11th Cir. 2012). Rulings of law are reviewed de novo, while the district court's findings of fact are reviewed for clear error, in the light most favorable to the prevailing party below. Id. at 1302-03. Purely legal questions relating to a defendant's claim of a constitutional violation are reviewed de novo. United States v. Van De Walker, 141 F.3d 1451, 1452 (11th Cir. 1998). We review district court determinations of voluntary consent for clear error. United States v. Zapata, 180 F.3d 1237, 1240-41 (11th Cir. 1999).

First, we are unpersuaded by Ward's challenge to the district court's assessment of witness credibility. Determining the credibility of witnesses is typically the "province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess" it. United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). District courts are required to "conduct a proper credibility determination, which

includes looking to the internal consistency of the [witness's] testimony, or his candor or demeanor on the stand." Id. (quotation omitted). But we will defer to the district court's credibility determinations unless the evidence is "contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." Id. (quotation omitted).

Here, Ward has not met the burden of showing that the district court clearly erred in adopting the magistrate judge's credibility recommendation. The magistrate judge's recommendation was based not only on Ward's interest in the case relative to Deputy Clark's, but also on Clark's calm and confident demeanor when testifying. The magistrate judge expressly said that he had considered all the testimony of the two witnesses in making the credibility recommendation. The magistrate judge also noted that the differences in their testimony were material and reasoned that, despite the plausibility and coherence of Ward's version of events, Clark's version of events was more credible based on the other factors. Thus, the determination was not so inconsistent or improbable on its face that a reasonable fact finder could not accept it, nor was it contrary to the laws of nature.

We also reject Ward's claim that Deputy Clark's questioning of Ward was not a consensual encounter. The Fourth Amendment protects individuals from unreasonable search and seizure. U.S. Const. Amend. IV. We have categorized encounters between police and citizens into three broad types: "(1) police-citizen

3

exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006). The first type of encounter, often referred to as a consensual encounter, does not implicate the Fourth Amendment at all. Id.

The government bears the burden of proving a consensual encounter based on a totality of circumstances. United States v. Jordan, 635 F.3d 1181, 1186 (11th Cir. 2011). The Supreme Court has held that police officers may, without any level of suspicion of criminal activity, pose questions, ask for identification, and request consent to search luggage. United States v. Drayton, 536 U.S. 194, 201 (2002). Indeed, nothing in the Constitution "prevents a policeman from addressing questions to anyone on the streets." Jordan, 323 F.3d at 1186 (quotation omitted). However, if the citizen's cooperation is induced by "coercive means" or if a reasonable person would not feel free to leave, then the encounter is no longer consensual, a seizure has occurred, and the Fourth Amendment is implicated. Id.

In determining whether a police-citizen encounter was consensual, we may consider the following factors: (1) whether a suspect's path is blocked or impeded; (2) whether police retain his identification; (3) the suspect's age, education and intelligence; (4) how long he is detained and questioned; (5) how many officers were present; (6) whether weapons were displayed; (7) whether there was any physical touching of the citizen; and (8) the language and tone of voice used by

4

police.  Id.  The ultimate inquiry remains whether a person's freedom of movement was restrained by physical force or a show of authority.  Id.

Here, Ward's argument fails because the facts, when viewed in the light most favorable to the government, show that the encounter was consensual. Deputy Clark testified that he pulled up from behind and did not use his siren or shout, but merely asked Ward a handful of questions.  Moreover, Ward willingly approached Clark and, when asked about the pillowcase, dumped its contents onto the hood of Clark's vehicle without being told to do so.  His path was not blocked, his identification was not retained, the questioning was brief, and Ward has interacted with police in the past.  Clark did not draw his weapon, nor did he restrain Ward until he saw the magazine with the bullet visible at the top.  Under the government's proof, the totality of the circumstances indicates that the encounter was consensual until Clark spotted the magazine.  As a result, the evidence was not tainted by an illegal encounter.

Finally, we find no merit to Ward's claim that the search of his pillowcase was involuntary.  Law enforcement officers may conduct a warrantless search without probable cause if they first obtain voluntary consent.  See United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989).  The government has the burden of showing, by a preponderance of the evidence, both consent to search and that the consent was voluntary.  United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir.

5

2004).  The voluntariness of consent to law enforcement activity is judged in light of the totality of the circumstances.  United States v. Tobin, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc).  "Whether consent is deemed involuntary depends upon the amount of threat presented."  Id.  This determination may encompass:

> [the] voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.

Blake, 888 F.2d at 798.  Consent is voluntary if it is "the product of an essentially free and unconstrained choice."  Zapata, 180 F.3d at 1241 (quotation omitted).

Here again, the district court properly found that Ward's actions were voluntary.  Deputy Clark did not ask to search the bag or view its contents in the first instance.  As Clark testified, Ward approached Clark when he pulled up behind him, and when Clark questioned him, he unilaterally dumped the contents of the pillowcase onto the police vehicle, putting them in Clark's plain view.  Clark was alone, he did not use a weapon, and he did not shout or do anything else that might be deemed threatening or coercive.  Moreover, Ward's own attorney conceded Ward is a "seasoned criminal," so he likely has familiarity with police procedure.  And, his conversation from jail indicates he had forgotten he had the bullets in his possession, thus it is plausible that he did not expect there to be anything incriminating in the pillowcase when he overturned it.  As we've already

noted, the stop was properly deemed a consensual encounter; thus, there was no illegal arrest to taint Ward's voluntary conduct.

**AFFIRMED**.