[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14423

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DION GREGORY FISHER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:18-cr-00236-VMC-TGW-1

_____

Before WILSON, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

Defendant-Appellant Dion Fisher was convicted by a jury of multiple counts of trafficking fentanyl and money laundering.  On appeal, Fisher challenges the district court's denial of his motion to suppress evidence seized from his home and person and the district court's decision to allow a witness to testify at trial who was not listed on the government's witness list.  After careful review, we affirm on both issues.

I.

A grand jury indicted Fisher on 15 counts, charging him with conspiring to manufacture, possess with intent to distribute, and distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846 (Count 1); possessing with intent to distribute and distributing fentanyl, in violation of 21 U.S.C. § 841(a)(1) (Counts 2-4); possessing with intent to distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) (Count 5); possessing with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) (Count 6); possessing with intent to distribute pentylone, in violation of 21 U.S.C. § 841(a)(1) (Count 7); and engaging in illegal monetary transactions, in violation of 18 U.S.C. §§ 1957 and 2 (Counts 9–16).[1]

---

[1] Fisher was not charged in Count 8 of the indictment.

Fisher subsequently filed a motion to suppress items seized from his house and person in the district court, arguing that the items were found pursuant to an illegal detention. While Fisher conceded that there was a search warrant for his home, he contended that he was not detained in the immediate vicinity of the premises to be searched, as required for detentions incident to the execution of a search warrant. Fisher thus argued that his detention was unlawful. Fisher further argued that, even if the original seizure was lawful, both the length of his detention and the lapse in time between the beginning of his detention and the start of the search was unreasonable. He argued that, consequently, all evidence obtained both from his person during the detention and from his house pursuant to the search warrant should be excluded.

The government responded that the search warrant was valid, and that Fisher was detained a block away from the location of the search, which was within the immediate vicinity. The government further argued that the lapse in time between Fisher's detention and the beginning of the search was due to the need for law enforcement officials to don protective chemical gear (HAZMAT suits) before entering the house. Finally, the government argued that the duration of the search—and, by extension, Fisher's detention—was not excessive.

A magistrate judge held a hearing on the motion to suppress. At the hearing, the government called Deputy Matthew Schultheis who testified to the following. On February 15, 2018, Schultheis was tasked with detaining Fisher while law enforcement officers

executed a search warrant at his residence.  At approximately noon, an officer surveilling Fisher's residence notified Schultheis that Fisher had left his residence in a vehicle.  Schultheis initiated a traffic stop of the vehicle and instructed Fisher to get out of the car.

Schultheis then detained Fisher in the back seat of his car. Schultheis did not question Fisher at any time while he was detained.  Approximately one hour after the traffic stop, the officers who executed the search warrant donned HAZMAT gear and began the search of Fisher's home.  Schultheis thereafter arrested Fisher after a detective advised him to do so based on the evidence found in the home.  When Schultheis initially detained Fisher prior to the search of the house, he searched Fisher, finding two cell phones.

Schultheis further testified that the location at which he stopped and detained Fisher was approximately 40 feet from Fisher's house.  After Schultheis concluded his testimony, the magistrate judge verified with the government that the cell phones seized from Fisher during the traffic stop did not contain material evidence.

On May 3, 2019, the magistrate judge issued a report and recommendation (R&R) that recommended denying Fisher's motion to suppress.  The magistrate judge found, in relevant part, that there was no basis for suppressing the evidence obtained from Fisher's residence because it was seized pursuant to a valid search warrant.  The magistrate judge also found that there was nothing to suppress as a result of Fisher's detention because the only items

seized from his person were two cellphones that the government indicated did not contain material evidence.

The magistrate judge also concluded that the government had probable cause to arrest Fisher. The affidavit supporting the search warrant included evidence that Fisher sold confidential informants thousands of dollars' worth of pills that tested positive for fentanyl. Therefore, Fisher was lawfully detained, and any evidence collected was admissible. The magistrate judge also discussed whether Fisher's detention was authorized as a detention incident to the execution of the search warrant, but it declined to decide the issue since Fisher's detention was lawful in any event.

The magistrate judge further reasoned that, even if Fisher's detention was unlawful, the evidence seized from his residence was admissible under the independent source exception. The magistrate judge reasoned that because there was a valid search warrant for Fisher's residence, any evidence seized from that residence was obtained independent of any constitutional violation and thus admissible. Finally, the magistrate judge notified the parties that failure to file written objections within fourteen days would result in waiver of the right to challenge any unobjected-to factual findings or legal conclusions adopted by the district court.

On May 21, 2019, the district court adopted the R&R, noting that no objections had been filed, and denied Fisher's motion to suppress. Fisher's case then proceeded to a jury trial.

6                    Opinion of the Court                 19-14423

During the trial, the government called Detective Karl Gwynne to testify. However, before Gwynne could begin his testimony, the court conducted a sidebar, noting that Gwynne was not listed on the government's witness list. The government then orally moved to add him to the witness list. Fisher objected. The government informed the court that Gwynne was inadvertently left off the witness list, but that he was listed as an evidence custodian in a report provided to Fisher during discovery. The court heard argument on the matter outside the presence of the jury.

The government stated that Gwynne's testimony would be based on a Pinellas County Sheriff's Office (PCSO) evidence log and a three-sentence supplemental report. The government then argued that there could be no prejudice because Fisher received the reports during discovery and Gwynne's name was on each evidence bag.

In response, Fisher argued that Gwynne's name was not on the government's witness list, and it was not a name that he would realize was missing. Fisher asserted that he had prepared for each witness on the witness list. Fisher then argued that the government had sufficient time to make sure their witness list was correct and therefore should be prohibited from calling Gwynne as a witness. However, Fisher was unable to articulate to the court what harm could result from the admission of Gwynne's testimony.

The government insisted that Gwynne would be testifying solely as a records custodian and that he was the only person who could testify to the matter.

19-14423                    Opinion of the Court                      7

After hearing from the parties, the court found that no prejudice would result from Gwynne's testimony. Specifically, the court stated that "[i]t could have been any one of these individuals. It doesn't sound like the name is what's important. It's the role he played." Consequently, the court ruled that it would allow Gwynne to testify. Following the ruling, the court took a recess of almost one hour. After the recess was over, the government informed the court that it had provided the exhibit list to Fisher before trial, and thus Fisher had notice of the exact items that Gwynne's testimony would introduce. At no point did Fisher request a continuance to further prepare for Gwynne's testimony.

As relevant to the resolution of this appeal, Gwynne testified to the following. Gwynne had been working with the PCSO since 2005 and was employed solely at the PCSO throughout the investigation. Gwynne worked as the evidence custodian for the non-drug evidence seized during the search of Fisher's residence on February 15, 2018. As evidence custodian, Gwynne logged the non-drug evidence seized from Fisher's home, including receipts and records pertaining to jewelry, cars, wire transfers, and bank accounts. Gwynne identified each piece of evidence, each of which was subsequently admitted over Fisher's objections.[2]

At the conclusion of the six-day trial, the jury convicted Fisher of all charges except for Count 7. The district court then

---

[2] No cell phones or information taken from cell phones were admitted at trial.

sentenced Fisher to a total sentence of 360 months' imprisonment followed by a total of 60 months of supervised release.

## II.

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). We review the district court's factual findings for clear error and its application of the law to the facts de novo. *Id.*

A defendant waives review of the denial of his suppression motion when he does not file "specific written objections" within the time set by the court or within fourteen days of being served with the magistrate's report and recommendation. *See* Fed. R. Crim. P. 59(b)(2). Additionally, our court's rules state that the failure to object to a magistrate judge's report and recommendation "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object." 11th Cir. R. 3-1. We may, however, review the issue for plain error "if necessary in the interests of justice." *Id.* Additionally, any issues not raised in an appellant's initial brief are deemed abandoned and are not considered. *United States v. Levy*, 379 F.3d 1241, 1243 (11th Cir. 2004) (per curiam).

Under a plain error analysis, a defendant must show (1) an error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of

judicial proceedings. *United States v. Cotton*, 535 U.S. 625, 631 (2002). To demonstrate that an error affected his substantial rights, a defendant "must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (internal quotation marks omitted).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The exclusionary rule prohibits the use of tangible materials seized during an unlawful search as evidence. *Murray v. United States*, 487 U.S. 533, 536 (1988). The exclusionary rule also prohibits the introduction of derivative evidence, or evidence that is otherwise acquired as an indirect result of an unlawful search, "up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint" of the unlawful search. *Id.* at 536–37 (internal quotation mark omitted).

However, the independent source exception provides that evidence obtained from a lawful source that is independent of any Fourth Amendment violation is admissible. *Id.* at 537–38. The rationale is that "the exclusionary rule should not put the government in a worse position than if the constitutional violation had not occurred." *United States v. Noriega*, 676 F.3d 1252, 1260 (11th Cir. 2012).

Fisher waived his right to appellate review of the denial of his motion to suppress by not timely filing objections to the

magistrate judge's R&R.  *See* Fed. R. Crim. P. 59(b)(2).  While we may still review Fisher's claim for "plain error if necessary in the interests of justice," *see* 11th Cir. R. 3-1, Fisher did not state in his brief that we should review his claim on that basis and thus has abandoned this argument.  *See Levy*, 379 F.3d at 1242–43.

Accordingly, we affirm the district court's denial of Fisher's motion to suppress.

III.

We review a district court's decision to admit witness testimony under an abuse-of-discretion standard.  *United States v. Crabtree*, 878 F.3d 1274, 1287 (11th Cir. 2018).  A district court abuses its discretion when it "applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *Id.*

In general, "[a] criminal defendant has no absolute right to a list of the government's witnesses in advance of the trial." *United States v. Johnson*, 713 F.2d 654, 659 (11th Cir. 1983).  Nevertheless, the district court has the discretion to require the government to produce its witness list.  *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981) ("[R]equiring production of a list of the government's witnesses is a matter of judicial discretion, and proof of abuse of discretion is necessary for reversal.").  In *Colson*, we held that a district court's denial of a defendant's motion to require production of the government's witness list was not an abuse of

discretion because "disclosure of the list would not have materially aided his defense." *Id.* at 1392.

Fisher contends that the district court abused its discretion by permitting the government to call Gwynne to testify at trial since he was not on the government's witness list. Gwynne's testimony unfairly surprised defense counsel, Fisher argues, and resulted in defense counsel having no opportunity to prepare for an effective cross-examination.

The district court did not abuse its discretion by permitting Gwynne to testify despite the government's accidental omission of his name from the witness list. Fisher has failed to show any actual prejudice resulting from Gwynne's testimony or explain how counsel's cross-examination would have differed if Gwynne had been included on the witness list. Because "proof of abuse of discretion is necessary for reversal," and Fisher has offered no such proof, we affirm. *See id.* at 1391.

AFFIRMED.