[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16249
Non-Argument Calendar
_____

D.C. Docket No. 2:11-cr-00026-RWS-SSC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DOUGLAS E. PERRY, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 2, 2013)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Douglas Perry, Jr. appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). For the reasons set forth below, we affirm Perry's conviction.

I.

Perry filed a motion to suppress evidence and statements law enforcement officers obtained pursuant to a stop and search of Perry's vehicle. At a suppression hearing before a magistrate judge, Deputies Casey Cope and Neal Hinsley testified that, on June 14, 2011, the two were sitting together in a stationary patrol vehicle on the side of a highway when they observed a 2004 Porsche Cayenne vehicle fail to maintain its lane of traffic, in violation of Georgia law. After witnessing the violation, they began to follow the vehicle, and they then witnessed it fail to maintain its lane a second time. Cope also testified that, before stopping the Porsche, Hinsley drove alongside the Porsche for safety purposes and to determine whether any additional traffic violations were occurring. The deputies stopped the Porsche and determined that Perry was the driver. Cope and Hinsley both testified that Perry consented to a search of his vehicle. After searching Perry's vehicle, the deputies discovered marijuana and a firearm inside of the vehicle.

Perry filed a post-hearing brief, arguing, *inter alia*, that the stop of his vehicle was unconstitutional because it was not based on probable cause that a traffic violation had occurred. Perry asserted that no extrinsic evidence supported

2

the deputies' testimony at the suppression hearing and that the credibility of the deputies' testimony was in doubt. Perry argued that he did not actually commit a traffic violation, but rather Cope and Hinsley pulled alongside Perry's vehicle and decided to initiate a traffic stop based on their observation of "an expensive vehicle with out of state plates . . . [and] a black person with dreadlocks driving." Perry also argued that his consent to the search was involuntary based on the show of authority by the officers on the scene.

In a report and recommendation ("R&R"), the magistrate determined that the deputies had probable cause to stop Perry's vehicle when they first observed Perry fail to maintain his lane, in violation of Georgia law. The magistrate determined that Cope and Hinsley consistently and credibly testified about their observations. The magistrate found that Perry's argument that the deputies only stopped him after observing his race was misplaced because (1) the deputies credibly testified that they observed Perry's vehicle fail to maintain its lane when they were parked on the side of the highway and that they decided to make a traffic stop based on that violation, and (2) Cope credibly explained that the deputies pulled alongside Perry's vehicle prior to making the traffic stop for safety reasons and to determine whether additional violations had occurred. Moreover, once the deputies witnessed Perry's traffic violation, the deputies' stop of Perry's vehicle was appropriate regardless of any pretextual motivations. The magistrate further

3

determined that Perry voluntarily consented to the search of his vehicle because both Cope and Hinsley credibly testified that Perry consented, and the totality of the circumstances indicated that the consent was voluntary. Because the traffic stop and search of Perry's vehicle did not violate the Fourth Amendment, the magistrate recommended that Perry's motion to suppress be denied.

Perry filed objections to the magistrate's R&R, again asserting that Cope and Hinsley were not credible and that no extrinsic evidence supported their testimony. After reviewing the record, including Perry's objections, the district court adopted the R&R as its opinion and denied Perry's motion to suppress evidence and statements. Perry then pled guilty to being a felon in possession of a firearm, reserving his right to appeal the denial of his motion to suppress. The court sentenced him to 84 months' imprisonment.

## II.

On appeal, Perry argues that the district court should have granted his motion to suppress evidence and statements obtained pursuant to the stop of his vehicle because the stop constituted an unconstitutional seizure. Perry contends that Cope and Hinsley lacked probable cause to believe that Perry had committed a traffic violation. Perry asserts that no extrinsic evidence supports the deputies' contention that they initiated a traffic stop of Perry's vehicle because he failed to maintain his lane. Perry further asserts that the deputies testified inconsistently as

4

to the timing of the first traffic violation. Perry argues that Cope's testimony was not credible because he testified that, at the time of the traffic stop, he discussed the second alleged traffic violation with Perry, but Cope also testified that he did not notice the second violation until the day before the suppression hearing. Perry also argues that Cope's testimony that the deputies pulled alongside Perry's vehicle for safety reasons was not credible. Specifically, Cope testified that the patrol vehicle did not pull directly alongside Perry's vehicle, but a video recording[1] of the patrol vehicle pulling alongside Perry's vehicle does not show any portion of Perry's vehicle. Perry argues that this recording shows that the patrol vehicle was, in fact, directly alongside his vehicle. According to Perry, the deputies only decided to stop him after they pulled alongside an expensive vehicle with out-of-state plates and discovered that the driver was black and had dreadlocks.

Perry further argues that the court erred in denying his motion to suppress because he did not voluntarily consent to the search of his vehicle. Specifically, the "show of authority by several officers" rendered his consent involuntary. Perry contends that Cope had his weapon drawn when he requested that Perry exit his vehicle. At the point that Perry consented to the search, he was "surrounded" by three uniformed law enforcement officers and was not told that he could refuse consent. Additionally, Perry's driver's license still had not been returned at the

---

[1] The video camera that recorded the events was at the front of the patrol vehicle.

time he gave consent, and although he was not in handcuffs, he was not free to leave. Perry further argues that the search of his vehicle cannot be upheld as a search incident to a lawful arrest.

In reviewing a district court's denial of a motion to suppress, we review the district court's findings of fact for clear error and its application of law *de novo*. *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). Because the voluntariness of consent is a question of fact, we will not disturb a district court's finding on that issue unless it was clearly erroneous. *Id.* at 1240-41. We construe all facts in the light most favorable to the party that prevailed in the district court and afford substantial deference to a factfinder's explicit and implicit credibility determinations. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012). We accept the district court's choice of whom to believe "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation omitted). Thus, we defer to the district court's factual determinations unless the district court's understanding of the facts is "unbelievable." *Id.* (quotation omitted).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. A traffic stop is considered a seizure

6

subject to the protections of the Fourth Amendment. *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). A decision to stop a vehicle is reasonable under the Fourth Amendment when an officer has probable cause to believe that a traffic violation occurred. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). The subjective motivations of the involved police officers are not relevant to the Fourth Amendment analysis and do not render an otherwise reasonable stop unconstitutional. *Id.* at 813, 116 S.Ct. at 1774.

A search of a vehicle is reasonable under the Fourth Amendment when law enforcement receives a person's voluntary consent to search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 222, 93 S.Ct. 2041, 2043-44, 2046, 36 L.Ed.2d 854 (1973). Whether a defendant voluntarily consented to a search is determined by the totality of the circumstances. *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989). Relevant factors in determining voluntariness, none of which is dispositive, include: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedure; (3) the extent and level of the defendant's cooperation with police; (4) the defendant's awareness of his right to refuse to consent to the search; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *Id.* A failure to inform the defendant of his right to refuse consent, however, does not necessarily invalidate an otherwise voluntary consent. *See Zapata*, 180 F.3d at

7

1242.  Rather, while knowledge of the right to refuse consent is a factor to be taken into account, such knowledge is not required for consent to be effective. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2047-48.

Here, Perry argues that Cope's and Hinsley's testimony concerning the events of June 14, 2011 was not credible.  However, the deputies did not testify so inconsistently, as to when they first noticed that Perry was failing to maintain his lane, that their testimony that they had witnessed the first traffic violation was unbelievable.  Further, the exact timing of Perry's failure to maintain his lane was not material to the issues raised at the suppression hearing.  Next, the record shows that Cope's statement about observing the second violation on the video recording was not inconsistent with his statement that he discussed that violation with Perry, because Cope merely stated that he discovered the day before the suppression hearing that the second violation was visible on the video recording, not that it had occurred.  Lastly, whether the patrol vehicle was directly alongside Perry, as opposed to only partially alongside his vehicle, is immaterial to whether the traffic violation occurred or whether the deputies pulled alongside his vehicle for safety reasons.  We conclude that Perry has not shown that Cope's and Hinsley's testimony concerning observing Perry commit either of the two traffic violations was unbelievable.  Accordingly, we defer to the court's determination that the deputies credibly testified that, while sitting stationary on the highway, they

8

observed Perry commit a Georgia traffic violation, and they initiated a stop based on that violation. *See Ramirez-Chilel*, 289 F.3d at 749. Because the deputies had probable cause to believe that a traffic violation had occurred, the decision to stop Perry was reasonable. *See Whren*, 517 U.S. at 810, 116 S.Ct. at 1772. Moreover, even if the stop of Perry was motivated in part due to Perry's race, the subjective motivations of Cope and Hinsley do not render an otherwise reasonable stop unconstitutional under the Fourth Amendment. *See id.* at 813, 116 S.Ct. at 1774.

Next, the totality of the circumstances surrounding Perry's consent to the search of his vehicle shows that it was voluntary. Specifically, the magistrate found credible Hinsley's testimony that only three officers were on the scene at the time Perry consented to the search, and Perry has not disputed this finding. Additionally, at the time of Perry's consent, Cope had not yet told Perry to sit on the ground, as this instruction came after Perry's vehicle was searched, and Perry was not yet handcuffed. Further, the officers did not physically or verbally threaten Perry to obtain his consent and did not have their weapons out or pointed at Perry. Rather, Cope asked for Perry's consent to search in a "monotone," which indicates that Cope did not ask for consent in a threatening manner. Perry also informed the officers that nothing would be found in the search, which is a factor supporting the voluntariness of his consent. *See Blake*, 888 F.2d at 798.

The fact that Perry's driver's license had not been returned at the time he consented to the search did not make his consent involuntary. *See Purcell*, 236 F.3d at 1281 (determining that consent to search vehicle was voluntary when an officer possessed defendant's license, but did not threaten violence or suggest that the defendant could not refuse). Further, the fact that Perry was not free to leave at the time he consented is not relevant to the voluntariness analysis, but rather the question is whether he believed that he was free to refuse consent. *See United States v. Espinosa-Orlando*, 704 F.2d 507, 512 (11th Cir. 1983) (providing that the voluntariness of a consent is determined from the circumstances surrounding the consent and that the standard is the same whether the defendant is in custody, under arrest, or merely stopped at the time of the consent). Although Perry notes that he was not told that he could refuse consent, a failure to inform a defendant of his right to refuse consent does not invalidate an otherwise voluntary consent, although this is a factor for consideration. *See Zapata*, 180 F.3d at 1242; *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2047-48.

In *Espinosa-Orlando*, officers asked a defendant for consent to search his vehicle when the defendant was lying facedown on the ground and one officer had his weapon drawn, and we determined that the defendant's consent was voluntary notwithstanding the circumstances surrounding his consent. 704 F.2d at 512-13. Because the circumstances here are far less coercive, we conclude that Perry's

10

consent to search was voluntary under the totality of the circumstances. *See Blake*, 888 F.2d at 798. Because the search was authorized by Perry's consent, we do not address Perry's argument that the deputies could not lawfully search his vehicle incident to his arrest. Accordingly, the district court properly denied Perry's motion to suppress.

For the foregoing reasons, we affirm Perry's conviction.

**AFFIRMED.**