[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10585
Non-Argument Calendar

_____

D.C. Docket No. 2:18-cr-00188-SPC-NPM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEFFREY WILLIAM FORGET,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 27, 2021)

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Jeffrey Forget was riding as a passenger in a truck which was pulled over after officers observed that he was not wearing a seatbelt.  When an officer asked for Forget's identification so that he could issue him a citation for the seatbelt violation, Forget gave a false name and claimed to have lost his wallet.  After the police officers identified Forget and discovered two outstanding warrants for his arrest, they arrested him and searched a backpack in his possession in which they discovered counterfeit one-hundred-dollar bills.  On appeal, Forget challenges the district court's denial of his motion to suppress the evidence obtained at the traffic stop, including any statements he made, the fraudulent one-hundred dollar bills in his wallet, and the evidence obtained from his backpack, arguing that the officers unlawfully extended the traffic stop in violation of the Fourth Amendment and that they improperly searched his backpack without a warrant.  After careful consideration, we affirm the district court.

## I.    Background

### A. Factual background

On October 10, 2018, detectives Michael Holmberg and Chad Davenport of the Naples Police Department ("NPD") were surveilling a hotel for drug-related activity in Naples, Florida.  Holmberg saw Forget and another man leave the hotel in a red pickup truck.  The two men later returned with food and a black backpack and went into a hotel room.  Forget and the other man left the hotel room shortly

2

afterwards accompanied by a third man and got back into the truck. Forget was sitting in the passenger seat and had the black backpack on the floor between his legs. Holmberg radioed Davenport, who was sitting in a separate car in a different location near the hotel, to tell him that the truck was leaving. Davenport noticed that Forget was not wearing a seatbelt and pulled the truck over as it turned into another nearby parking lot.

The traffic stop began at 1:03 p.m. After pulling the truck over, Davenport asked everyone in the truck for identification, approached the driver's window, and began speaking with the driver, who he identified as Nicholas Cronin. Cronin refused to provide consent to search the truck. While Davenport was speaking with Cronin, Holmberg arrived on the scene, went to the passenger side of the car, and began speaking with Forget, because Forget had committed the seatbelt offense. Forget told Holmberg that his name was Jason Farber and provided a birthdate, but said he had forgotten his wallet, did not have another form of identification, and did not know his social security number. Holmberg noticed that Forget had tattoos that appeared to be jailhouse tattoos and was wearing a long-sleeved shirt, which struck him as odd because it was a hot day. Holmberg asked Forget if he had ever been arrested and Forget said that he had not.

Holmberg returned to his police car to confirm Forget's identity and radioed dispatch and asked them to search for Jason Farber in the state drivers' license

3

database.  Holmberg learned from dispatch that there was a Jason Farber who lived on the other side of the state, but Farber's identification picture did not fully match Forget's appearance.  Although there was some similarity between Forget and the picture, Forget's story about "where he was coming from and where the ID was from . . . didn't make a lot of sense" to Holmberg.  Holmberg also thought it was suspicious that Forget did not know his social security number and was travelling from out of town without a wallet.

Holmberg needed to confirm Forget's identity to write him a ticket for the seatbelt offense, so at 1:10 p.m. he called in a request for a fingerprint scanner from the county sheriff's office.  A few minutes before he called for a fingerprint scanner, Holmberg called in a request for a K-9 unit despite being unable to smell drugs or see any contraband in the truck.  The K-9 unit did not show up and the request was eventually cancelled.

Deputy Creamer from the county sheriff's office arrived with a fingerprint scanner at approximately 1:30 p.m.  Creamer thought he recognized Forget because Forget matched the description of a suspect who had attempted to pass a fake one-hundred-dollar bill at a hardware store less than a quarter of a mile away earlier that morning.  The scanner identified Forget and showed two warrants outstanding for his arrest.  At approximately 1:36 pm, the officers arrested Forget because of the outstanding warrants and because he had given a false name to a

4

law enforcement officer—a crime under Florida law.  As a search incident to the arrest, Davenport searched Forget's wallet—which was on his person—and found two fake one-hundred-dollar bills.

After Forget's arrest, Holmberg asked Cronin about the backpack Forget had been carrying, which had been between Forget's legs on the passenger floorboard during the stop.  Cronin replied that the backpack was Forget's, Cronin did not wish to keep it, and that he did not even know Forget but had only given him a ride.  Holmberg and Davenport then performed an inventory search of Forget's backpack in accordance with NPD policy, which requires that all property taken into custody be documented on a receipt, regardless of whether the property was evidence or personal property.  Inside Forget's backpack, Holmberg and Davenport discovered hard-covered books with counterfeit bills between the pages. Another NPD officer who arrived on the scene created a property receipt to keep track of everything that the officers found.

## B.  Procedural History

A grand jury indicted Forget for counterfeiting currency, in violation of 18 U.S.C. § 471,[1] and possession of counterfeit currency, in violation of 18 U.S.C.

---

[1] "Whoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the United States, shall be fined under this title or imprisoned not more than 20 years, or both."  18 U.S.C. § 471.

5

§ 472.[2]  Forget filed a motion to suppress the evidence obtained at the traffic stop,[3]

arguing, as relevant to this appeal, that the stop was unreasonably prolonged

because the detectives asked to search Cronin's truck, requested a fingerprint

scanner to confirm Forget's identity, and requested a drug-sniffing dog unit to the

scene, which added time to the stop without reasonable suspicion.  Forget also

argued that the evidence of the contents of his backpack should have been

suppressed because the police should have waited for a warrant before searching it,

he had a reasonable expectation of privacy in the backpack, and the police had no

reasonable belief that it contained anything illegal.

The district court denied Forget's motion to suppress, finding, as relevant to

this appeal, that the officers did not unlawfully prolong the traffic stop.[4]  It

explained that the request for the fingerprint scanner was directly related to the

---

[2]  "Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined under this title or imprisoned not more than 20 years, or both."  18 U.S.C. § 472.

[3]  The motion to suppress at issue in this appeal is Forget's amended motion.  The district court denied his initial motion to suppress without prejudice for lack of standing.  For clarity's sake, we only discuss and refer to the amended motion in this opinion.

[4]  The district court noted the parties disagreed over whether our then valid precedent, *United States v. Campbell*, 970 F.3d 1342 (11the Cir. 2019), applied because Forget was stopped before the opinion was issued.  The district court determined that, under any existing case law, the detectives did not unlawfully prolong the stop.  To the extent that the parties rely on *Campbell*, we note that following briefing in this case, a majority of this Court voted to grant rehearing *en banc* in *Campbell*, and as a result we vacated the underlying panel decision, 981 F.3d 1014 (2020).  Accordingly, *Campbell* is no longer good law and will not be discussed further.

6

stop's purpose because, without verification of Forget's identity, the officers could not write him a citation for his seatbelt violation. It also explained that the request to search the truck and the request for the K-9 unit did not unlawfully prolong the stop because both requests were made before the police identified Forget and because Forget himself prolonged the stop by lying about his identity. The district court also held that the police did not need a warrant to search Forget's backpack because it fell within the inventory exception to the Fourth Amendment's warrant requirement. Once Cronin disowned the backpack, the officers had to either take it into custody or leave it by the roadside. The officers followed standard procedure to itemize Forget's property so it was protected from interference and so the police were protected from any unknown but dangerous items inside. Additionally, the court explained, the officers were not required to complete the inventory at the station per NPD standard procedure and, even if the backpack had been searched at the station, the counterfeit bills would have been discovered anyway.

Forget waived his right to a jury trial and the parties agreed to a stipulation of facts. After a bench trial, the district court found Forget guilty on both charges and sentenced him to 30 months' imprisonment followed by three years of supervised release. Forget timely appealed the order denying his motion to suppress.

## II.    Standard of Review

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). We accept the district court's factual findings as true unless the findings are clearly erroneous. *Id*. at 1240–41. "[A]ll facts are construed in the light most favorable to the prevailing party below." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). We review the district court's application of the law to the facts *de novo*. *Id*. If a suppression argument is raised for the first time on appeal, however, we review it for plain error. *United States v. Johnson*, 777 F.3d 1270, 1274 (11th Cir. 2015).

## III.    Discussion

### A. The district court properly found that the traffic stop was not unlawfully prolonged.

Forget argues that the district court should have found that the officers unlawfully prolonged the traffic stop beyond the amount of time needed to address the seatbelt offense when they asked permission to search the car and called for a K-9 unit before requesting verification of his identity. He also argues that the officers prolonged the stop by requesting a fingerprint scanner from the county sheriff's office instead of using their own. Finally, he asserts that the traffic stop

8

was pretextual because the officers were on narcotics duty rather than traffic patrol, and the purpose of the stop was to look for drugs without reasonable suspicion.

When conducting a traffic stop, police officers may not detain a suspect indefinitely and the stop must be "limited in scope and duration," *Florida v. Royer*, 460 U.S. 491, 500 (1983), and cannot be unlawfully prolonged. *See Rodriguez v. United States*, 575 U.S. 348, 354–56 (2015). In *Rodriguez,* the Supreme Court explained that "[a] seizure for a traffic violation justifies a police investigation of that violation." *Id*. at 354. In conducting a traffic stop, an officer may, in addition to determining whether to issue a citation, conduct ordinary inquiries such as checking the driver's license, determining whether the driver has outstanding warrants, and inspecting the vehicle registration and proof of insurance. *Id.* at 355. The "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 354. If a traffic stop is unlawfully prolonged and violates the Fourth Amendment, any evidence collected may be suppressed under the exclusionary rule. *See Davis v. United States*, 564 U.S. 229, 231–32 (2011) (explaining that the exclusionary rule "bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation.").

In *Rodriguez*, the Supreme Court found that a traffic stop was unlawfully prolonged where an officer stopped a car for a traffic infraction, issued a citation to

9

the driver and returned his license and proof of insurance, and then conducted a K-9 sniff of the car to search for drugs. 575 U.S. at 350–52, 354–55, 358. The drug sniff was not an inquiry incident to writing a ticket for the traffic infraction and the officer prolonged the stop beyond the time needed to address the traffic infraction. The Court also explained that its holding was consistent with two earlier cases addressing whether a stop was unlawfully prolonged, *Illinois v. Caballes*, 543 U.S. 405 (2005), and *Arizona v. Johnson*, 555 U.S. 323 (2009). *Id.* at 354–55.

In *Caballes*, the Court held that a traffic stop was not unlawfully prolonged by a drug sniff of a car because the search occurred while the officer was in the process of writing a ticket. 543 U.S. at 406–08. The unrelated investigation "did not lengthen the roadside detention." *Rodriguez*, 575 U.S. at 354 (citing *Caballes*, 543 U.S. at 406, 408). And in *Johnson*, a traffic stop was not unlawfully prolonged where three officers pulled over a car for a traffic infraction, and while one officer made inquiries into the driver's license and vehicle registration, another officer simultaneously asked a passenger unrelated questions about gang affiliation. 555 U.S. at 327–28. The Supreme Court explained that the stop was not unlawfully extended because "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Id*. at 333.

10

Applying *Rodriguez* here, we find that the officers did not unlawfully extend the traffic stop. Viewing the facts in the light most favorable to the government, Davenport requested all three passengers' identification before asking Cronin if he could search the truck, and Holmberg simultaneously began discussing Forget's identification with him so he could issue a citation for the seatbelt offense. Although Davenport's request to search the car was not related to the purpose of the stop, it occurred simultaneously with Holmberg's inquiries into Forget's identification, and thus it did not add any time to the stop beyond the time it took to complete inquiries incident to the seatbelt violation. *See Rodriguez*, 575 U.S. at 355; *Johnson*, 555 U.S. at 327–28.

Holmberg's request for a K-9 unit also did not unlawfully extend the traffic stop. Holmberg had already asked Forget for his identification and was waiting for dispatch to send him the picture and other identifying information for Jason Farber when he requested the K-9 unit. There is no evidence that Holmberg's request lengthened the process of identifying Forget. Some time elapsed while the fingerprint scanner was brought to the scene, but because Forget lied about his identity and the picture for Jason Farber was not an exact match, that delay was necessary to identify Forget so Holmberg could issue a traffic citation. The K-9 unit did not show up at the scene and the request was cancelled, so the original call did not add any time to the stop beyond the time it took to identify Forget. Forget

11

urges us to find that the mere fact that Holmberg called for the K-9 unit before he called for the fingerprint scanner was an unlawful extension, but that interpretation goes beyond the bounds of *Rodriguez* and we decline to do so.

Forget also argues that the officers' motive for the stop was pretextual and that they only pulled the truck over to look for drugs without reasonable suspicion. But we have held that as long as an officer conducting a traffic stop has probable cause to believe a traffic violation has occurred, "the officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (quotation omitted). Here, because the officers saw that Forget was not wearing a seatbelt, pulled him over to issue a citation for the seatbelt violation, and their inquiries unrelated to the seatbelt did not add any time to the stop, the traffic stop was not invalidated by what the officers were doing immediately before the stop. We affirm the district court's denial of Forget's motion to suppress the evidence obtained at the traffic stop.

**B. The district court properly found that the inventory exception applied to the contents of Forget's backpack.**

Forget argues that the district court erroneously found that the inventory exception applied to the contents of his backpack for two reasons. First, he argues that the NPD did not have proper standardized procedures for determining whether items should be inventoried and that the officers did not comply with the standard

12

operating procedures that the NPD did have in place.  Second, he alleges that the

that the officers' reasons for searching the bag were pretextual, as they were

looking for drugs and had no reasonable suspicion based on his actions.  We

disagree.

Because Forget raises these arguments for the first time on appeal, we

review them for plain error only.  *Johnson*, 777 F.3d at 1274.  We will find plain

error only 'where (1) there is an error in the district court's determination; (2) the

error is plain or obvious; (3) the error affects the defendant's substantial rights in

that it was prejudicial and not harmless; and (4) the error seriously affects the

fairness, integrity, or public reputation of judicial proceedings.'"  *Id*. at 1277

(quoting *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001)); *see also*

*United States v. Olano*, 507 U.S 725, 732–37 (1993).  The defendant bears the

burden of establishing plain error.  *Johnson*, 777 F.3d at 1277.

Generally, the Fourth Amendment requires that law enforcement officers

obtain a warrant supported by probable cause before searching a person's property.

*United States v. Babcock*, 924 F.3d 1180, 1186 (11th Cir. 2019).  However,

inventory searches of an arrestee's personal property are a "well-defined

exception" to the warrant requirement.  *Colorado v. Bertine*, 479 U.S. 367, 371

(1987).  "An inventory search is the search of property lawfully seized and

detained, in order to ensure that it is harmless, to secure valuable items (such as

13

might be kept in a towed car), and to protect against false claims of loss or damage." *Whren v. United States*, 517 U.S. 806, 812 n.1 (1996) (citing *South Dakota v. Opperman,* 428 U.S. 364 (1976)); *see also United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010). Police officers have "both the right and the duty" to take into custody and inventory a suspect's property that would otherwise be left unattended. *United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir. 1980).

An inventory search "must not be a ruse for a general rummaging in order to discover incriminating evidence," *Florida v. Wells*, 495 U.S. 1, 4 (1990), but an otherwise reasonable inventory search is not rendered illegal simply because police officers had a "suspicion that contraband or other evidence may be found," *Staller*, 616 F.2d at 1290 (quotation omitted). And, if evidence would have inevitably been discovered during a routine inventory search, it is admissible. *United States v. Rhind*, 289 F.3d 690, 694 (11th Cir. 2002).

When officers conduct an inventory-search, they must base their decision to search a bag or container on "standardized criteria" or "established routine." *Wells*, 495 U.S. at 3–4. However, "'standard criteria' need not be detailed criteria." *Johnson*, 777 F.3d at 1277. No Supreme Court precedent "prohibits the exercise of police discretion" during an inventory search "so long as that discretion is exercised according to standard criteria and on the basis of something other than

14

suspicion of evidence of criminal activity." *Wells*, 495 U.S. at 3–4 (quoting *Bertine*, 479 U.S. at 375).

Forget has not carried his burden of establishing that the district court's ruling was in error and that the error was plain. The district court properly found that the inventory search exception applied to Forget's backpack. The officers knew that the backpack belonged to Forget because Cronin told them that it was not his and that he did not want to keep it. And, as the officers had already arrested Forget, they had a duty to take the backpack and could not leave it unattended at the scene. S*ee Farley*, 607 F.3d at 1333. The detectives complied with the NPD's standard operating procedures by searching the backpack and they recorded the backpack's contents on an inventory receipt.

We now turn to Forget's two arguments that the inventory exception should not apply. First, he argues that the NPD did not have proper inventory procedures and that the officers did not comply with the procedures that the NPD did have in place. To support his assertions, Forget cites to decisions from other circuits involving vehicle impoundment where courts found that the inventory exception did not apply because officers impounded or searched a vehicle without a warrant when their departments did not have a standardized procedure for vehicle impoundment and there was not evidence that the vehicle in question was a public safety threat. Forget appears to argue by analogy that the same rationale applies to

15

his backpack and that the inventory exception does not apply because the NPD did not have standardized procedures for taking personal items into custody and they had no reason to suspect his backpack was dangerous.  Forget's argument is meritless.  The NPD did have a policy directing its officers to search items taken into custody to protect officers from any potentially dangerous items, to protect the NPD from theft accusations, and to safeguard an arrestee's property.  As we have already explained, the fact that this policy gives officers discretion in searching property for inventory purposes does not mean that there is no "standard criteria." *See Wells*, 495 U.S. at 3–4; *Johnson*, 777 F.3d at 1277.  Forget's allegations are insufficient for us to overturn the district court's application of the inventory exception under plain error review.

Second, Forget argues that the search of the backpack was motivated by a desire to search for incriminating evidence.  This argument likewise fails.  Forget's assertion that the officers were fishing for incriminating evidence also does not justify the exclusion of the evidence because the search was otherwise reasonable in the context of Forget's arrest, and the officers' suspicion that there may be some evidence of illegal activity is not enough to invalidate the search.  *Staller*, 616 F.2d at 1290.  Thus, we affirm the district court's denial of Forget's motion to suppress the evidence of the contents of his backpack.

**AFFIRMED.**